NO. 07-06-0349-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 15, 2007


 ______________________________



ALEX M. FLORES, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2005-409540; HONORABLE BRADLEY S. UNDERWOOD, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Appellant, Alex M. Flores, was convicted by a jury of the offense of possession of
a controlled substance, cocaine, in an amount over four grams but less than 200 grams. 
Appellant pled true to the enhancement paragraph of the indictment and the jury sentenced
him to 30 years confinement in the Institutional Division of the Texas Department of
Criminal Justice. Through two issues, appellant contends that the evidence was legally
insufficient to show his possession of a portion of the cocaine and that the amount he
possessed was more than four grams as alleged. We affirm.

Factual Background


 On June 2, 2005, Lubbock Police Officer Scott Childers was on patrol in the Depot
District of Lubbock. He observed the vehicle being driven by appellant had an expired
registration sticker. Upon stopping the vehicle, Officer Childers further observed that the
inspection sticker and registration sticker were for different vehicles. The steering column
on the car had been "punched," meaning that the car did not require a key to start it. All
of these facts led the officer to suspect that the car had been stolen. 

 Appellant was the driver of the car with Nathan Lemon in the right front passenger's
seat. Upon approaching the driver's side of the vehicle, Officer Childers asked the
appellant to step out of the car. As appellant was complying, Lemon started to get out of
the car, but the officer advised him to remain seated. Appellant stepped from the car and,
at the same time, Lemon bolted from the car and took off running. As this was occurring,
appellant tried to pull free from the officer by spinning out of his control. Officer Childers
wrestled appellant to the ground and handcuffed him. Officer Childers placed appellant
under arrest for resisting arrest. Lemon was later located by a back up unit and arrested.

 After securing appellant, the police proceeded to secure the car by performing an
inventory of its contents. While conducting the inventory, the police located a bag of white
powder in the seat back pocket behind the passenger seat. A field test performed on the
powder tested positive for cocaine. 

 Appellant was taken to the jail where appellant became very uncooperative. As a
result, appellant was not immediately processed for booking. Instead appellant was placed
in a holding cell after his personal property had been gathered and inventoried. During the
inventory of appellant's personal property, a small bag containing a white powder was
discovered. 

 Both the large bag and the small bag were submitted to the Department of Public
Safety Regional Crime Laboratory for analysis. At trial, the DPS forensic scientist testified
that both bags tested presumptively positive for cocaine and a sample from the larger bag
was found, after specific testing, to be cocaine. Total weight of both bags, without the
container, was 8.04 grams. 

 After the jury convicted appellant of possession of cocaine in an amount over four
grams but less than 200 grams and sentenced appellant to 30 years confinement,
appellant gave notice of appeal. By his appeal, appellant puts forth two issues. First,
appellant alleges that the evidence was legally insufficient to establish that he possessed
the cocaine found in the seat back pocket behind the passenger's seat. Second, appellant
contends that the evidence was legally insufficient to prove that he possessed over four
grams of cocaine. We disagree.

Standard of Review


 In assessing the legal sufficiency of the evidence, we review all the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133
S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an
appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict
unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). Legal sufficiency is measured
against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240
(Tex.Crim.App. 1997). See also Gollihar v. State, 46 S.W.3d 243, 255-56 (Tex.Crim.App.
2001).

 To convict a citizen of possession of a controlled substance, the State must prove
that the accused 1) exercised actual care, custody, control, or management over the
substance; and 2) knew the matter possessed was contraband. Tex. Health & Safety
Code Ann. § 481.002(38) (Vernon Supp. 2006); Poindexter v. State, 153 S.W.3d 402, 405
(Tex.Crim.App. 2005). Further, the evidence must establish that the accused's connection
with the contraband was more than fortuitous. Brown v. State, 911 S.W.2d 744, 747
(Tex.Crim.App. 1995). When, as in the case before the court, the accused is not in
exclusive possession of the place where contraband is found, additional independent facts
and circumstances must be shown that link the appellant to the contraband. Poindexter,
153 S.W.3d at 406. These independent facts, commonly referred to as "affirmative links,"
that connect the accused to the contraband may be established by direct or circumstantial
evidence. Id. at 405-06. 

 A number of different types of "links" have been identified by the appellate courts
in the State of Texas. They may include, but are not limited to: 1) the defendant's
presence when the drugs were found; 2) whether the drugs were in plain view; 3) the 
defendant's proximity to and the accessibility of the drugs; 4) whether the defendant was
under the influence of drugs when arrested; 5) whether the defendant possessed other
drugs or drug paraphernalia when arrested; 6) whether the defendant made incriminating
statements when arrested; 7) whether the defendant attempted to flee; 8) whether the
defendant made furtive gestures; 9) whether there was an odor of drugs; 10) whether the
defendant owned or had the right to possess the place where the drugs were found; 11)
whether the place the drugs were found was enclosed; 12) the amount of drugs found; 13)
whether the defendant possessed weapons; and 14) whether appellant possessed a large
amount of cash. Taylor v. State, 106 S.W.3d 827, 831 (Tex.App.-Dallas 2003, no pet.). 
However, it is the logical force of these links and not the number of links which determine
whether the State's evidence links the defendant to the contraband. Id.

Analysis


 Appellant contends that the evidence was legally insufficient to establish that he
possessed the larger bag of drugs found in the seat back pocket of the passenger's seat.
On the evening in question appellant was found to be driving a vehicle in which the drugs
were contained. Being the driver, appellant was in sole control of the vehicle. As such, he
could be said to be in immediate possession of the place where the drugs were found. The
drugs were found behind the passenger's seat in the seat back pocket. The seat back
pocket behind the passenger's seat was within the reach of both appellant and the
passenger. The jury could well conclude that it was actually easier for the appellant to
reach the pocket where the drugs were found. The drugs found in the seat back pocket
were a white powder. Appellant was found to have another bag of white powder drugs on
his person. The record does not reflect that the passenger was found to be in possession
of additional drugs. The passenger attempted to flee when the police stopped the vehicle. 
When the passenger fled, the appellant attempted to escape from the grasp of the
arresting officer, which led to his arrest for resisting arrest. Both bags tested presumptively
positive for cocaine. The larger bag tested qualitatively positive as cocaine. 

 When all of the facts are taken together, we cannot say that the jury made an
irrational decision in finding appellant guilty of possession of cocaine. Jackson, 443 U.S.
at 319; Ross, 133 S.W.3d at 620. Appellant argues that there were a number of other links
that did not tie appellant to the cocaine. That argument has little persuasion, for as stated
above, it is not the number of links that is determinative of the sufficiency of the State's
proof, but rather the logical force of the links that are demonstrated. Taylor, 106 S.W.3d
at 831. In this case, the facts that appellant was driving the vehicle, appellant attempted
to escape, the drugs were within appellant's easy reach, and appellant's possession of
other drugs contribute significant logical force to link appellant to the drugs and was,
therefore, legally sufficient evidence to support the jury's finding that appellant was guilty
of possession of cocaine in an amount of four grams or more but less than 200 grams. 
Accordingly, the appellant's first issue is overruled.

 Overruling appellant's first issue renders his second issue becoming moot. The
DPS forensic scientist testified that the total weight of the contraband, less its packaging
was 8.04 grams, well over the minimum of four grams or more required by the Court's
charge. 


Conclusion


 The judgment of the trial court is affirmed.

 

 Mackey K. Hancock

 Justice




Do not publish. 







 



 do more harm to appellant
than good, especially during punishment, when the State could offer almost any evidence. 

 Counsel designated Dr. Pascua-Lim, a psychiatrist, as an expert witness to testify
on appellant's mental condition and other matters. She had previously evaluated
appellant's competency to stand trial and found as a risk assessment that if the aggravated
sexual assault was proven, it was a "past history of behavior that [would] definitely be a
factor to consider in assessing future risk of harming others." In reviewing three reports
she prepared on appellant's competency, counsel testified he made a strategic decision
not to call her as a witness for fear that cross-examination might reveal harmful
information. 

 Counsel did communicate with Helga Gongaware who was familiar with appellant
through his MHMR services. Counsel believed that Gongaware thought of appellant as a
"nice guy" who was always eager to please. He made the strategic decision not to call her
during punishment because he was apprehensive she might open the door for the State
to pursue extraneous offenses.

 Counsel's strategy in not presenting evidence of appellant's mental retardation was
that his condition was apparent to the jury. He also believed that appellant's mental
retardation was not an excuse for his conduct and would not elicit sympathy from a jury.

 Counsel testified that appellant was adamant he not interview his wife nor family
members, except for his brother, Larry. Counsel made several unsuccessful attempts to
contact Larry, and he died before trial. Appellant led counsel to believe his family
members would not be helpful. After trial, counsel spoke with an older brother of
appellant's, Ronnie, who claimed that appellant had raped and impregnated his daughter. 
Although counsel learned this after trial, it confirmed his opinion that testimony from
appellant's family members would have been highly prejudicial.

 By his first two issues, appellant contends counsel's failure to investigate, obtain,
and present mitigating evidence during the punishment phase denied him his constitutional
right to effective assistance of counsel. We disagree. A claim of ineffectiveness at the
punishment phase is reviewed under the standard set out in Strickland v. Washington, 466
U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 988 S.W.2d
770, 771-72 (Tex.Cr.App. 1999). Under Strickland, a defendant must establish that (1)
counsel's performance was deficient (i.e., fell below an objective standard of
reasonableness), and (2) there is a reasonable probability that but for counsel's deficient
performance, the result of the proceeding would have been different, a reasonable
probability being a probability sufficient to undermine confidence in the outcome. 
Strickland, 466 U.S. at 690-94. See also Rylander v. State, 101 S.W.3d 107, 110
(Tex.Cr.App. 2003); Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Cr.App. 1986). In other
words, appellant must demonstrate by a preponderance of the evidence that the deficient
performance prejudiced his defense. Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Cr.App.
2002); Thompson v. State, 9 S.W.3d 808, 813 (Tex.Cr.App. 1999). Failure to make the
required showing of either deficient performance or sufficient prejudice defeats the
ineffectiveness claim. Thompson, 9 S.W.3d at 814, citing Strickland, 466 U.S. at 700.

 The adequacy of defense counsel's assistance is based upon the totality of the
representation rather than by isolated acts or omissions of trial counsel. Id. Although the
constitutional right to counsel ensures the right to reasonably effective counsel, it does not
guarantee errorless counsel whose competency or accuracy of representation is to be
judged by hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984); see also
Ex Parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). Appellate review of trial
counsel's representation is highly deferential and presumes that counsel's conduct fell
within the wide range of reasonable and professional representation. See Andrews v.
State, 159 S.W.3d 98, 101 (Tex.Cr.App. 2005). See also Bone v. State, 77 S.W.3d 828,
833 (Tex.Cr.App. 2002).

 Judicial scrutiny of counsel's performance must be highly deferential. Strickland,
466 U.S. at 689. It is all too tempting to second-guess counsel's assistance after
conviction or adverse sentence, and it is all too easy for a court examining counsel's
defense after it has proved unsuccessful to conclude that a particular act or omission of
counsel was unreasonable. Id. Strategic choices made after thorough investigation of law
and facts relevant to plausible options are virtually unchallengeable; and strategic choices
made after less than complete investigation are reasonable precisely to the extent that
reasonable professional judgments support the limitations on investigation. Id. at 690-91. 
In any ineffectiveness claim, a decision not to investigate must be directly assessed for
reasonableness. Id. at 691. See also Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct.
2527, 156 L.Ed.2d 471 (2003).

 The voluminous record sheds light on appellant's family and social history. He has
numerous siblings, but did not have an ideal childhood. The brother he was closest to
died before trial. Appellant suffered a severe head injury at a young age that caused him
to experience seizures. He did not finish high school, and at age 17 was admitted to a
State hospital where he resided until 1987. He received services from the Department of
Mental Health and Mental Retardation for approximately two decades. He was 
hospitalized in 1992 for suicidal ideation and depression following an allegation of sexual
assault by a teenage girl. He has abused alcohol since he was 13 and also uses
marihuana, both of which affect the brain, especially in someone with intellectual
dysfunction.

 To support his ineffective assistance claim, appellant relies on recent United States
Supreme Court decisions involving assessment of death sentences. He also relies on the
ABA Standards for Criminal Justice, which the Court applies in determining
reasonableness. (1) In Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360
(2005), the Court found counsel deficient in failing to investigate the court file on the
defendant's prior convictions because counsel knew the prosecution was seeking the
death penalty by using violent prior convictions to prove aggravating factors. According
to the Court, counsel compromised the opportunity to respond to a case for aggravation. 
Id. at 2465. In the underlying case, the State only presented two witnesses whose
testimony was limited to appellant having a bad reputation as a law abiding citizen. No
aggravating evidence was presented by the State that required counsel to respond. 
Additionally, counsel explained that his trial strategy in not presenting mitigating evidence
was to prevent harmful cross-examination.

 A significant decision relied on by appellant is Wiggins v. Smith, 539 U.S. 510, 123
S.Ct. 2527, 156 L.Ed.2d 471 (2003). In Wiggins, the Court found trial counsel ineffective
for failing to discover and present powerful mitigating evidence of appellant's troubled
history. Counsel's limited investigation fell short of the prevailing professional standards. 
During her opening statement counsel told the jury it would hear of the defendant's difficult
life but failed to introduce any evidence thereof during the proceedings. In assessing the
reasonableness of counsel's failure to conduct a thorough investigation, the Court found
it resulted from inattention and abandonment of the investigation at an unreasonable
juncture, and not from reasoned strategic judgment. Id. at 524-527. See generally Ex
parte Woods, 176 S.W.3d 224, 226-27 (Tex.Cr.App.2005) (denying habeas corpus relief
based on applicant's claim of ineffective assistance of counsel because counsel's decision
not to pursue certain mitigating evidence that would have been subject to cross-examination was based on "reasonable professional judgments [supporting] the limitations
on investigation.")

 A third decision relied on by appellant is Williams v. Taylor, 529 U.S. 362, 120 S.Ct.
1495, 146 L.Ed.2d 389 (2000). In sustaining Williams's ineffective assistance claim, the
Court found that counsel failed to investigate and present substantial mitigating evidence
during sentencing proceedings. Id. at 363. According to the record, counsel began
preparing for sentencing a week beforehand and failed to discover extensive records of
the defendant's "nightmarish childhood," his borderline mental retardation, and favorable
evidence demonstrating that Williams had received commendations for helping crack a
prison drug ring and for returning a guard's wallet. Id. at 396. Counsel was also
ineffective in failing to discover testimony from prison officials that Williams was least likely
to act violently or dangerously among inmates and testimony from a prison minister that
Williams thrived in a more regimented and structured environment. Id. The Court found
that failure to introduce favorable evidence was not the result of a tactical decision to
focus on Williams's confession. Id. 

 We distinguish Williams for several reasons. First, there is no evidence in our
record that trial counsel waited until shortly before the sentencing phase to begin
preparing. Additionally, except for appellant's employment and ability to manage his
finances, no positive mitigating evidence was presented at the motion for new trial hearing
that might have impacted the jury's assessment of punishment. 

 Counsel in the underlying case supported his strategic decision not to pursue a
mitigation case out of concern that more harm than good would result. Although he
designated Dr. Pascua-Lim as an expert, he did not follow through because cross-examination might have disclosed prejudicial information. He made a strategic choice not
to interview family members or co-workers at his client's insistence, which later proved to
be reasonable. When a defendant gives counsel reason to believe that pursuing certain
investigations may be more harmful than useful, counsel's failure to pursue those
investigations may not later be challenged as unreasonable. Strickland, 466 U.S. at 690-91. In short, inquiry into conversations between counsel and his client may be critical to
a proper assessment of counsel's strategic choices. Id. 

 Testimony from an inexperienced law school graduate and a non-lawyer that a jury
was entitled to presentation of appellant's entire life should not outweigh counsel's
strategic decision based on his experience in these type cases in the Lubbock community. 
Neither should another attorney's opinion on how he would have defended the case be
applied under these facts to find trial counsel's choices were unreasonable. 

 Strickland does not require trial counsel to investigate every conceivable line of
mitigating evidence nor present mitigating evidence. Wiggins, 539 U.S. at 512. The jury's
assessment of four life sentences in the underlying case does not authorize this Court to
judge counsel's performance in hindsight. See Ingham, 679 S.W.2d at 509. Appellant
has not satisfied his burden that based on the totality of counsel's representation any
identified acts or omissions were outside the wide range of reasonable and professional
representation. Applying a heavy measure of deference to counsel's judgments, we
conclude his strategic choice in making a less than complete investigation was based on
reasonable professional judgments supporting the limitations on investigation. Id. Issues
one and two are overruled.

 By his remaining four issues, appellant contends the trial court erred in denying his
motion for expert assistance filed pursuant to article 26.05 of the Texas Code of Criminal
Procedure. We disagree. Article 26.05(d) provides that appointed counsel in a noncapital
case shall be reimbursed for reasonable and necessary expenses incurred with prior court
approval, including expenses for mental health and other experts. The decision to appoint
an expert under the statute lies within the sound discretion of the trial court. Stoker v.
State, 788 S.W.2d 1, 16 (Tex.Cr.App. 1989), cert. denied, 498 U.S. 951, 111 S.Ct. 371,
112 L.Ed.2d 333 (1990). 

 Appointment of an expert is required when a defendant makes a preliminary
showing of a significant issue of fact on which the State would present expert testimony
and which the knowledge of a lay jury would not be expected to encompass. Rey v. State,
897 S.W.2d 333, 339 (Tex.Cr.App. 1995). A trial court does not err in refusing to appoint
an expert witness to assist an indigent defendant in rebutting a type of expert opinion that
the State did not present. Jackson v. State, 992 S.W.2d 469, 474 (Tex.Cr.App. 1999). 

 By his motion for expert assistance, appellant requested authorization for expenses
of a registered sex offender therapist. He provided the expert's curriculum vitae and an
estimate of his fees and expenses. He alleged the expert would be crucial in establishing
trial counsel's ineffectiveness in not presenting mitigating evidence. He further alleged
the expert's testimony on appellant's manageability as a sex offender would have
impacted the jury's decision. 

 The motion was supported by an investigator's affidavit in which he averred he had
reviewed trial records and appellant's psychiatric records. He believed appellant's
evaluating psychiatrist, who was unavailable to sign an affidavit, could have provided
relevant mitigating evidence. He also recommended evaluation by a registered sex
offender therapist for candidacy for probation. No affidavit from a sex offender therapist
nor any other evidence indicating the need for funds for such an expert was provided. 

 The only expert witnesses presented by the State during the guilt/innocence phase
were the forensic interviewer who interviewed the two young victims and the sexual
assault nurse who examined them. The State did not offer any expert evidence on sex
offender programs. Appellant failed to make a preliminary showing of a significant fact
on which the State would present expert sex offender evidence.

 Additionally, we have concluded that trial counsel was not ineffective in deciding
not to present a mitigation case. Thus, the trial court did not abuse its discretion in
denying appellant's motion for authorization of expenses for a sex offender therapist. 
There being no error, appellant's constitutional rights were not violated. Issues three, four,
five, and six are overruled. 

 Accordingly, the trial court's judgments are affirmed.

 Don H. Reavis

 Justice


Do not publish.
1. Paragraph 4-4.1 of the ABA Standards provides in part:


 Defense counsel should conduct a prompt investigation of the circumstances
of the case and explore all avenues leading to facts relevant to the merits of
the case and the penalty in the event of conviction. The investigation should
include efforts to secure information in the possession of the prosecution and
law enforcement authorities. The duty to investigate exists regardless of the
accused's admissions or statements to defense counsel of facts constituting
guilt or the accused's stated desire to plead guilty.