**Ex Parte Steven Michael WOODS.**

**No. AP–75287.**

Court of Criminal Appeals of Texas.

Nov. 2, 2005.

---

7. *Ibid.*

11. *See Colburn,* 966 S.W.2d at 520.

Alexander Calhoun, Austin, for Appellant.

Kathleen Walsh, Asst. Crim. Dist. Atty., Denton, Matthew Paul, State's Atty., Austin, for State.

### OPINION

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, JOHNSON, KEASLER, HERVEY and HOLCOMB, JJ., joined.

This is an application for writ of habeas corpus filed pursuant to Article 11.071 of the Texas Code of Criminal Procedure.

On August 21, 2002, applicant was convicted of capital murder. The jury answered the special issues submitted pursuant to Article 37.071, and the trial court, accordingly, set punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. *Woods v. State*, 152 S.W.3d 105 (Tex.Crim.App. 2004).

Applicant presents fifteen allegations in his application in which he challenges the validity of his conviction and resulting sentence. The trial court did not hold an evidentiary hearing. The trial court entered findings of fact and conclusions of law and recommended that the relief sought be denied. We adopt the trial court's comprehensive findings of facts and conclusions of law and, based upon those findings and our own independent review, we deny relief.

We need address only why applicant's first claim—that of ineffective assistance of counsel during the punishment phase of his trial—is without merit when gauged by the standards set out in *Strickland v. Washington*,[1] and refined by *Wiggins v. Smith*.[2]

In his application for writ of habeas corpus, applicant repeatedly cites to *Wiggins v. Smith*, arguing that, much like the attorneys in *Wiggins*, applicant's trial counsel failed to properly investigate his background and failed to present available mitigating evidence. While there are some similarities between applicant's claim and that found in *Wiggins*, their differences predominate.

Kevin Wiggins was convicted of first degree murder, robbery, and theft by a

---

1.  466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

2.  539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *see also Rompilla v. Beard*, —— U.S. ——, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).

Maryland judge, and he then elected to be sentenced by a jury.[3] During opening arguments of his sentencing hearing, Wiggins's attorneys promised to present evidence of their client's "difficult life."[4] However, during that hearing, they presented no evidence concerning his alcoholic mother, sexually abusive foster parents, or any other mitigating circumstances.[5] Instead, they focused wholly on "'retrying the factual case' and disputing Wiggins's direct responsibility for the murder."[6] The Supreme Court found their performance to be deficient, not because they failed to *present* the mitigating evidence that they had promised, but because they failed to *investigate* mitigating factors.[7]

While *Strickland* does not require defense counsel to investigate each and every potential lead, or present any mitigating evidence at all, it does require attorneys to put forth enough investigative efforts to base their decision not to present a mitigating case on a thorough understanding of the available evidence.[8] Because the attorneys in *Wiggins* did not conduct an adequate investigation, they could not have made "a fully informed decision with respect to sentencing strategy."[9] Thus,

they failed to provide objectively reasonable assistance of counsel under the first prong of the *Strickland* standard.[10]

However, in the present case, applicant's attorneys *did* investigate their client's background, and *did* present mitigating evidence, albeit only a minimal amount. During their investigation, they spoke with applicant's family members, tracked down medical, psychological and school records, used expert witnesses, and extensively interviewed applicant himself regarding potential mitigating evidence.

Applicant's counsel hired three separate mitigation specialists to interview applicant and testify on his behalf. One of the three experts performed so poorly that the attorneys dismissed her early in their trial preparation. The second expert, Dr. Kelly Goodness, interviewed applicant extensively, and fully reviewed his social and medical history. Based on her findings, Dr. Goodness was unwilling to state under oath that applicant would not pose a threat of future dangerousness, and she believed that no other objective expert would be able to reach a different conclusion based upon personal interaction with applicant.

3. *Id.* at 515, 125 S.Ct. 2456.

4. *Id.*

5. *Id.* at 515–17, 125 S.Ct. 2456.

6. *Id.* at 517, 125 S.Ct. 2456.

7. *Id.* at 522–34, 125 S.Ct. 2456. The Supreme Court found the failure to investigate was unreasonable because the attorneys had access to information in the Department of Social Services report and the presentence investigation which would have led a reasonable attorney to further investigate Wiggins's family and social history.

8. *Id.* at 533, 125 S.Ct. 2456. *Strickland* sets out a two prong test for determining whether trial counsel was constitutionally ineffective.

A defendant must first prove that his trial counsel's performance fell below an objective standard of reasonableness. If this prong is met, the defendant must then show that but for the ineffective assistance, a reasonable probability exists that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

9. *Wiggins*, 539 U.S. at 528, 123 S.Ct. 2527.

10. *Id.* at 533, 123 S.Ct. 2527. The Supreme Court noted that Wiggins "has the kind of troubled history we have declared relevant to assessing a defendant's moral culpability." The Court went on to find "that had the jury been confronted with this considerable mitigating evidence, there is a reasonable probability that it would have returned with a different sentence." *Id.* at 535–36, 123 S.Ct. 2527.

Armed with this expert's opinion and her extensive information about their client's background and personality, applicant's attorneys took Dr. Goodness's advice to hire a third expert, Dr. Robin Neeley, to review applicant's records without conducting any face-to-face interviews. They hoped Dr. Neeley could give a "more objective, clinical-type opinion for mitigation," without being subject to cross-examination on her personal knowledge of applicant's previous "inappropriate" social behavior. Dr. Neeley testified during the sentencing hearing about applicant's drug addiction, self-injurious and suicidal behavior, abusive and alcoholic father, neglectful mother, and institutionalization for mental and drug-related problems. In fact, much of the mitigating evidence applicant now claims his attorneys should have presented through his friends and family was presented by Dr. Neeley. While applicant argues that this evidence would have been more favorable and personal if it had come directly from those who knew him best, his attorneys had good reasons for not calling these witnesses to testify at trial. They did not want the jury to "know" applicant.

Applicant's mother was willing to testify, but she was unwilling to admit that her son's failings had anything to do with his upbringing because she felt that she was a good mother who did the best she could with an out-of-control child. Before trial, applicant's father repeatedly refused to testify on his son's behalf under any circumstances. While other witnesses may have been willing to testify on applicant's behalf, they would have been subject to cross-examination regarding their knowledge of applicant's involvement in Satanism, his proclivity for making and using pipe bombs, and his abusive behavior towards other people as well as animals. It was not a deficient strategy for applicant's attorneys to decline to call witnesses who would testify to some mitigating facts, but

then be subject to cross-examination concerning a vast array of aggravating facts.

Further, the State informed applicant's attorneys that it had substantial rebuttal evidence ready if applicant sponsored such witnesses. This included evidence that applicant:

- sexually abused both his younger brother and a former girlfriend;
- made bombs in his home;
- physically abused his siblings;
- physically abused his dogs;
- attempted to burn down his school;
- physically threatened his teachers;
- actively participated in Nazi and skinhead groups;
- dealt drugs; and
- regularly carried a gun.

Applicant's stepfather, fiancée, and his fiancée's family were all willing to testify for the State regarding applicant's anti-social, sadistic behavior and bad character.

Applicant himself refused to give his own attorneys details of his "troubled" past. He consistently minimized the impact of—or denied the existence of—most of the mitigating evidence his attorneys were able to find. While applicant certainly would have been able to testify regarding his deeply "troubled" past, he was unwilling to admit that his childhood was anything other than that of the average person. Based on applicant's unwillingness to openly discuss mitigating evidence, and the other extraordinarily damaging information his attorneys learned of during their investigation, they determined that the best sentencing strategy would be to present only the clinical, objective opinion of an expert witness.

Applicant's trial attorneys did not interview each and every potential witness now suggested by applicant in his habeas application, and therefore they did not

conduct the most thorough investigation possible. Other attorneys might have interviewed more potential witnesses or used a different strategy at sentencing. However, unlike the attorneys in *Wiggins*, ample evidence shows that their decision not to pursue such avenues was based on "reasonable professional judgments [supporting] the limitations on investigation." [11] When an attorney opens Pandora's box, he is not constitutionally required to examine each and every disease, sorrow, vice, and crime contained therein before quietly and firmly closing the cover.

It is entirely reasonable to conclude that a Texas jury would be singularly unimpressed by the sordid details of applicant's background and bad character traits. Reasonable judgment in determining a sentencing strategy is sufficient under the standard set forth by the Supreme Court in *Strickland* and refined in *Wiggins*. Because applicant has failed to prove that his attorneys did not meet this standard, we conclude that applicant's ineffective assistance of counsel claim is without merit under federal constitutional standards.

WOMACK, J., concurs in the denial of relief.

---

**11.** *Id.* at 533, 123 S.Ct. 2527 (*quoting Strick-*    *land,* 466 U.S. at 690–91, 104 S.Ct. 2052).