NO. 07-04-0546-CR
NO. 07-04-0547-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 27, 2006

_____

KENNETH HAYES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NOS. 2002-400482 & 2002-400483; HONORABLE JIM BOB DARNELL, JUDGE

_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Following pleas of not guilty, appellant Kenneth Hayes was convicted of four counts of aggravated sexual assault and sentenced to four life terms. Presenting six issues, he challenges the trial court's judgments asserting ineffective assistance of counsel during the punishment phase and error by the trial court in denying his request for expert assistance.

Specifically, his first two issues are directed at counsel's failure to investigate, obtain, and present extensive mitigating evidence in violation of the Sixth Amendment and Article I, Section 10 of the Texas Constitution, and deprivation of a fair trial and due process of law guaranteed by the Fifth and Fourteenth Amendments and Article I, Section 19 of the Texas Constitution. By his third, fourth, fifth, and sixth issues, he maintains the trial court erred in denying his request for appointment of a registered sex offender therapist resulting in deprivation of due process of law guaranteed by the Fourteenth Amendment and Article I, Section 19 of the Texas Constitution, and articles 1.04 and 1.05 of the Texas Code of Criminal Procedure, in deprivation of the right to effective assistance of counsel guaranteed by the Sixth Amendment and Article I, Section 10 of the Texas Constitution and articles 1.04, 1.05, 1.051, and 26.04 of the Texas Code of Criminal Procedure, in deprivation of equal protection in violation of the Fifth and Fourteenth Amendments, Article I, Section 3 of the Texas Constitution, and article 1.05 of the Texas Code of Criminal Procedure, and in violation of the mandates of article 26.05 of the Texas Code of Criminal Procedure. We affirm.

Appellant was convicted of sexually assaulting two young girls who lived in the same apartment complex as he and his wife. He suffers from mild mental retardation and has a low IQ and speech impediment. His wife is also mentally challenged. Following pretrial hearings in 2002, he was evaluated by Dr. Elvira G. Pascua-Lim, a court-appointed psychiatrist, and found to be incompetent to stand trial. He spent approximately four months at North Texas State Hospital in Vernon for observation and treatment and was

2

then found competent to stand trial. Appellant's medical records indicated presumptive evidence that he was a pedophile.

At trial, the victims testified they visited appellant in his apartment to watch television, listen to music, and play games. They described sexual acts of anal and vaginal penetration committed by appellant that occurred in an upstairs bedroom. Appellant offered them cookie dough in exchange for their silence. According to the victims, appellant's wife remained downstairs and never participated. Additionally, two separate statements made by appellant in which he confessed his actions with the victims were introduced at trial while the investigating detective was testifying.

Following the guilt/innocence phase, the trial court conducted a hearing outside the jury's presence to hear testimony from the State's two punishment witnesses, a former police officer and a sexual assault victim of appellant from 1992. The former officer testified about investigating the 1992 sexual assault allegation and the victim, 25 years old at the time of trial, testified that appellant had sexually assaulted her when she was 13. No charges were ever filed. The trial court ruled any testimony of the extraneous conduct inadmissible, but allowed both witnesses to testify before the jury that appellant had a bad reputation as a law abiding citizen. No aggravating evidence was presented by the State during punishment.

Defense counsel's punishment evidence was limited to appellant taking the stand to testify he had never been convicted of a felony. The State did not cross-examine him.

During closing argument, the State argued against probation and requested a "stiff sentence." Defense counsel briefly explained the probation process to the jury and argued he did not believe a life sentence was called for if the jury considered probation inappropriate. During rebuttal, the State argued the victims would be affected for life and requested four life sentences as appropriate punishment.

Following his conviction and appointment of new counsel, appellant filed a motion for new trial alleging, among other grounds, ineffective assistance of counsel during the punishment phase for counsel's failure to present mitigating evidence. At a hearing on the motion, numerous witnesses testified, including trial counsel. The trial court overruled appellant's motion. Following is a summary of each witness's testimony presented at the motion for new trial hearing.

**Bonnie Hayes, Appellant's Sister**

Bonnie testified that although appellant and his father enjoyed a good relationship, he had a difficult childhood and was not close to most of his siblings. Appellant had suffered a severe head injury as a child that led to serious seizures and eventually resulted in him dropping out of school. After his father died, his mother sent him to a state school. Bonnie also testified that her ex-husband had sexually abused appellant.

**Jesse Valdez, Appellant's Co-worker**

Valdez worked with appellant as a janitor at a local high school. He testified that appellant was a good worker and followed instructions. He did not believe that appellant took an interest in any high school girls.

**Rob Cowie, Private Investigator**

Cowie testified he was a recent law school graduate awaiting bar exam results. As a private investigator he had investigated mitigation evidence on two capital cases. According to his investigation of the underlying case, trial counsel spent a minimal amount of time investigating mitigating evidence of appellant's mental retardation, alcoholism, education records, and troubled childhood. He testified that mental retardation is always a factor in presenting mitigating evidence, although he acknowledged there was no doubt appellant was mentally retarded.

On cross-examination, he admitted he had never tried a case; however, his personal guideline was that a mentally retarded person should always have a mitigation case developed. He also believed a jury should be presented with the "entire picture of a person" to determine appropriate punishment. He conceded, however, that his job was to investigate and not make strategic choices.

## Brian Murray, Criminal Defense Attorney

Murray testified as an expert on mitigation evidence cases and believes a good starting point is with the client, although the client should not dictate the investigation. His opinion is that an attorney has an ethical obligation to fully investigate regardless of a client's wishes. Murray testified that under the facts of the underlying case, he would have utilized the services of an investigator to look into appellant's social, psychological, medical, and biological background.

He testified that a Lubbock County jury would assess a life sentence to a defendant who anally and vaginally raped young girls. However, he believed the jury should have heard negative evidence about appellant and then be given a reason to disbelieve it by arguing his low IQ, mental retardation, or history of his head injury.

## Dr. Elvira G. Pascua-Lim, Psychiatrist

Dr. Pascua-Lim evaluated appellant in Vernon pursuant to a pretrial court order to determine his competency to stand trial. After she submitted her evaluation, she was not contacted by trial counsel until a year and a half later, the week before trial. She notified him she would be out of town and left a contact number. Although counsel had designated her as an expert witness, he made the strategic choice not to call her as a witness.

At the motion for new trial hearing, she testified extensively about appellant's background. Most of her information came from appellant's mental health and mental

6

retardation records. Appellant had a low IQ and suffered from a speech impediment that made communication difficult. He had suffered a head injury and seizures as a youth and spent ten years in the Lubbock State School. After being de-institutionalized, he lived in various group homes. He began abusing alcohol at age 13 and also used marihuana. He also spent 90 days in a hospital in Big Spring for depression and suicidal ideation. She communicated with Helga Gongaware, a human rights officer with MHMR, who knew appellant well. She questioned why appellant was not treated for his problems before things got out of control and Gongaware indicated the system had budget concerns. Dr. Pascua-Lim, however, believed that appellant was never treated because of his ability to maintain employment and manage his finances.

### Helga Gongaware, MHMR Human Rights Officer

Appellant spent approximately 20 years receiving services from the Mental Health Mental Retardation Department. Although Gongaware was never assigned to appellant as a case manager or service coordinator, she had frequent contact with him regarding his progress. After he was arrested in the underlying case, she became a client advocate for him. She testified for him at the suppression hearing to shed light on his mental retardation. She initiated several communications with trial counsel and telephoned several times, although her calls were not returned. In her opinion, appellant's life history was relevant to the jury in assessing punishment.

7

## Jeff Nicholson, Trial Counsel

Counsel's defense strategy was to suppress appellant's statements due to overreaching by the detective and convince the jury that the victims had concocted the abuse allegations. The motion to suppress was denied. Acknowledging that trial strategy is gauged by reasonableness, counsel testified that in his experience, mitigating evidence is useful when attempting to show that a good person has committed a bad act. He did not, however, want to pursue mitigating evidence that could do more harm to appellant than good, especially during punishment, when the State could offer almost any evidence.

Counsel designated Dr. Pascua-Lim, a psychiatrist, as an expert witness to testify on appellant's mental condition and other matters. She had previously evaluated appellant's competency to stand trial and found as a risk assessment that if the aggravated sexual assault was proven, it was a "past history of behavior that [would] definitely be a factor to consider in assessing future risk of harming others." In reviewing three reports she prepared on appellant's competency, counsel testified he made a strategic decision not to call her as a witness for fear that cross-examination might reveal harmful information.

Counsel did communicate with Helga Gongaware who was familiar with appellant through his MHMR services. Counsel believed that Gongaware thought of appellant as a "nice guy" who was always eager to please. He made the strategic decision not to call her

8

during punishment because he was apprehensive she might open the door for the State to pursue extraneous offenses.

Counsel's strategy in not presenting evidence of appellant's mental retardation was that his condition was apparent to the jury. He also believed that appellant's mental retardation was not an excuse for his conduct and would not elicit sympathy from a jury.

Counsel testified that appellant was adamant he not interview his wife nor family members, except for his brother, Larry. Counsel made several unsuccessful attempts to contact Larry, and he died before trial. Appellant led counsel to believe his family members would not be helpful. After trial, counsel spoke with an older brother of appellant's, Ronnie, who claimed that appellant had raped and impregnated his daughter. Although counsel learned this after trial, it confirmed his opinion that testimony from appellant's family members would have been highly prejudicial.

By his first two issues, appellant contends counsel's failure to investigate, obtain, and present mitigating evidence during the punishment phase denied him his constitutional right to effective assistance of counsel. We disagree. A claim of ineffectiveness at the punishment phase is reviewed under the standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See* Hernandez v. State, 988 S.W.2d 770, 771-72 (Tex.Cr.App. 1999). Under *Strickland*, a defendant must establish that (1) counsel's performance was deficient (*i.e.*, fell below an objective standard of reasonableness), and (2) there is a reasonable probability that but for counsel's deficient

performance, the result of the proceeding would have been different, a reasonable probability being a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 690-94. *See also* Rylander v. State, 101 S.W.3d 107, 110 (Tex.Cr.App. 2003); Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Cr.App. 1986). In other words, appellant must demonstrate by a preponderance of the evidence that the deficient performance prejudiced his defense. Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Cr.App. 2002); Thompson v. State, 9 S.W.3d 808, 813 (Tex.Cr.App. 1999). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Thompson*, 9 S.W.3d at 814, citing *Strickland*, 466 U.S. at 700.

The adequacy of defense counsel's assistance is based upon the totality of the representation rather than by isolated acts or omissions of trial counsel. *Id*. Although the constitutional right to counsel ensures the right to reasonably effective counsel, it does not guarantee errorless counsel whose competency or accuracy of representation is to be judged by hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984); *see also* Ex Parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). Appellate review of trial counsel's representation is highly deferential and presumes that counsel's conduct fell within the wide range of reasonable and professional representation. *See* Andrews v. State, 159 S.W.3d 98, 101 (Tex.Cr.App. 2005). *See also* Bone v. State, 77 S.W.3d 828, 833 (Tex.Cr.App. 2002).

Judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court examining counsel's defense after it has proved unsuccessful to conclude that a particular act or omission of counsel was unreasonable. *Id.* Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. *Id.* at 690-91. In any ineffectiveness claim, a decision not to investigate must be directly assessed for reasonableness. *Id.* at 691. *See also* Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

The voluminous record sheds light on appellant's family and social history. He has numerous siblings, but did not have an ideal childhood. The brother he was closest to died before trial. Appellant suffered a severe head injury at a young age that caused him to experience seizures. He did not finish high school, and at age 17 was admitted to a State hospital where he resided until 1987. He received services from the Department of Mental Health and Mental Retardation for approximately two decades. He was hospitalized in 1992 for suicidal ideation and depression following an allegation of sexual assault by a teenage girl. He has abused alcohol since he was 13 and also uses marihuana, both of which affect the brain, especially in someone with intellectual dysfunction.

11

To support his ineffective assistance claim, appellant relies on recent United States Supreme Court decisions involving assessment of death sentences. He also relies on the ABA Standards for Criminal Justice, which the Court applies in determining reasonableness.[1] In Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005), the Court found counsel deficient in failing to investigate the court file on the defendant's prior convictions because counsel knew the prosecution was seeking the death penalty by using violent prior convictions to prove aggravating factors. According to the Court, counsel compromised the opportunity to respond to a case for aggravation. *Id.* at 2465. In the underlying case, the State only presented two witnesses whose testimony was limited to appellant having a bad reputation as a law abiding citizen. No aggravating evidence was presented by the State that required counsel to respond. Additionally, counsel explained that his trial strategy in not presenting mitigating evidence was to prevent harmful cross-examination.

A significant decision relied on by appellant is Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). In *Wiggins*, the Court found trial counsel ineffective

---

[1]Paragraph 4-4.1 of the ABA Standards provides in part:

Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

for failing to discover and present powerful mitigating evidence of appellant's troubled history. Counsel's limited investigation fell short of the prevailing professional standards. During her opening statement counsel told the jury it would hear of the defendant's difficult life but failed to introduce any evidence thereof during the proceedings. In assessing the reasonableness of counsel's failure to conduct a thorough investigation, the Court found it resulted from inattention and abandonment of the investigation at an unreasonable juncture, and not from reasoned strategic judgment. *Id.* at 524-527. *See generally* Ex parte Woods, 176 S.W.3d 224, 226-27 (Tex.Cr.App.2005) (denying habeas corpus relief based on applicant's claim of ineffective assistance of counsel because counsel's decision not to pursue certain mitigating evidence that would have been subject to cross-examination was based on "reasonable professional judgments [supporting] the limitations on investigation.")

A third decision relied on by appellant is Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In sustaining Williams's ineffective assistance claim, the Court found that counsel failed to investigate and present substantial mitigating evidence during sentencing proceedings. *Id*. at 363. According to the record, counsel began preparing for sentencing a week beforehand and failed to discover extensive records of the defendant's "nightmarish childhood," his borderline mental retardation, and favorable evidence demonstrating that Williams had received commendations for helping crack a prison drug ring and for returning a guard's wallet. *Id*. at 396. Counsel was also ineffective in failing to discover testimony from prison officials that Williams was least likely

to act violently or dangerously among inmates and testimony from a prison minister that Williams thrived in a more regimented and structured environment. *Id.* The Court found that failure to introduce favorable evidence was not the result of a tactical decision to focus on Williams's confession. *Id.*

We distinguish *Williams* for several reasons. First, there is no evidence in our record that trial counsel waited until shortly before the sentencing phase to begin preparing. Additionally, except for appellant's employment and ability to manage his finances, no positive mitigating evidence was presented at the motion for new trial hearing that might have impacted the jury's assessment of punishment.

Counsel in the underlying case supported his strategic decision not to pursue a mitigation case out of concern that more harm than good would result. Although he designated Dr. Pascua-Lim as an expert, he did not follow through because cross-examination might have disclosed prejudicial information. He made a strategic choice not to interview family members or co-workers at his client's insistence, which later proved to be reasonable. When a defendant gives counsel reason to believe that pursuing certain investigations may be more harmful than useful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. *Strickland*, 466 U.S. at 690-91. In short, inquiry into conversations between counsel and his client may be critical to a proper assessment of counsel's strategic choices. *Id.*

Testimony from an inexperienced law school graduate and a non-lawyer that a jury was entitled to presentation of appellant's entire life should not outweigh counsel's strategic decision based on his experience in these type cases in the Lubbock community. Neither should another attorney's opinion on how he would have defended the case be applied under these facts to find trial counsel's choices were unreasonable.

*Strickland* does not require trial counsel to investigate every conceivable line of mitigating evidence nor present mitigating evidence. *Wiggins*, 539 U.S. at 512. The jury's assessment of four life sentences in the underlying case does not authorize this Court to judge counsel's performance in hindsight. *See Ingham*, 679 S.W.2d at 509. Appellant has not satisfied his burden that based on the totality of counsel's representation any identified acts or omissions were outside the wide range of reasonable and professional representation. Applying a heavy measure of deference to counsel's judgments, we conclude his strategic choice in making a less than complete investigation was based on reasonable professional judgments supporting the limitations on investigation. *Id*. Issues one and two are overruled.

By his remaining four issues, appellant contends the trial court erred in denying his motion for expert assistance filed pursuant to article 26.05 of the Texas Code of Criminal Procedure. We disagree. Article 26.05(d) provides that appointed counsel in a noncapital case shall be reimbursed for reasonable and necessary expenses incurred with prior court approval, including expenses for mental health and other experts. The decision to appoint

15

an expert under the statute lies within the sound discretion of the trial court. Stoker v. State, 788 S.W.2d 1, 16 (Tex.Cr.App. 1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990).

Appointment of an expert is required when a defendant makes a preliminary showing of a significant issue of fact on which the State would present expert testimony and which the knowledge of a lay jury would not be expected to encompass. Rey v. State, 897 S.W.2d 333, 339 (Tex.Cr.App. 1995). A trial court does not err in refusing to appoint an expert witness to assist an indigent defendant in rebutting a type of expert opinion that the State did not present. Jackson v. State, 992 S.W.2d 469, 474 (Tex.Cr.App. 1999).

By his motion for expert assistance, appellant requested authorization for expenses of a registered sex offender therapist. He provided the expert's curriculum vitae and an estimate of his fees and expenses. He alleged the expert would be crucial in establishing trial counsel's ineffectiveness in not presenting mitigating evidence. He further alleged the expert's testimony on appellant's manageability as a sex offender would have impacted the jury's decision.

The motion was supported by an investigator's affidavit in which he averred he had reviewed trial records and appellant's psychiatric records. He believed appellant's evaluating psychiatrist, who was unavailable to sign an affidavit, could have provided relevant mitigating evidence. He also recommended evaluation by a registered sex

offender therapist for candidacy for probation. No affidavit from a sex offender therapist nor any other evidence indicating the need for funds for such an expert was provided.

The only expert witnesses presented by the State during the guilt/innocence phase were the forensic interviewer who interviewed the two young victims and the sexual assault nurse who examined them. The State did not offer any expert evidence on sex offender programs. Appellant failed to make a preliminary showing of a significant fact on which the State would present expert sex offender evidence.

Additionally, we have concluded that trial counsel was not ineffective in deciding not to present a mitigation case. Thus, the trial court did not abuse its discretion in denying appellant's motion for authorization of expenses for a sex offender therapist. There being no error, appellant's constitutional rights were not violated. Issues three, four, five, and six are overruled.

Accordingly, the trial court's judgments are affirmed.

Don H. Reavis
Justice

Do not publish.