NO. 07-07-0401-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 11, 2008
                                       ______________________________

RICKY MORRISON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-417,356; HONORABLE CECIL G. PURYEAR, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
ABATEMENT AND REMAND
          Following a plea of not guilty, appellant Ricky Morrison was convicted by jury of
aggravated sexual assault and sentenced to fifty years confinement. Appellant timely filed
a notice of appeal challenging his conviction. The clerk’s record filed on January 9, 2008
contains the Trial Court’s Certification of Defendant’s Right of Appeal. The form, however,
is not signed by appellant as required by Texas Rule of Appellate Procedure 25.2(d).



 
          Consequently, we abate this appeal and remand the cause to the trial court for
further proceedings. On remand, the trial court shall utilize whatever means necessary to
secure a Certification of Defendant’s Right of Appeal in compliance with Texas Rule of
Appellate Procedure 25.2(d). Once properly executed, the certification shall be included
in a supplemental clerk’s record and filed with this Court on or before February 11, 2008.
          It is so ordered. 
 
                                                                                      Per Curiam





 

Do not publish. 






y testified that under the facts of the underlying case, he would have
utilized the services of an investigator to look into appellant's social, psychological,
medical, and biological background.

 He testified that a Lubbock County jury would assess a life sentence to a defendant
who anally and vaginally raped young girls. However, he believed the jury should have
heard negative evidence about appellant and then be given a reason to disbelieve it by
arguing his low IQ, mental retardation, or history of his head injury. 

Dr. Elvira G. Pascua-Lim, Psychiatrist


 Dr. Pascua-Lim evaluated appellant in Vernon pursuant to a pretrial court order to
determine his competency to stand trial. After she submitted her evaluation, she was not
contacted by trial counsel until a year and a half later, the week before trial. She notified
him she would be out of town and left a contact number. Although counsel had designated
her as an expert witness, he made the strategic choice not to call her as a witness.

 At the motion for new trial hearing, she testified extensively about appellant's
background. Most of her information came from appellant's mental health and mental
retardation records. Appellant had a low IQ and suffered from a speech impediment that
made communication difficult. He had suffered a head injury and seizures as a youth and
spent ten years in the Lubbock State School. After being de-institutionalized, he lived in
various group homes. He began abusing alcohol at age 13 and also used marihuana. He
also spent 90 days in a hospital in Big Spring for depression and suicidal ideation. She
communicated with Helga Gongaware, a human rights officer with MHMR, who knew
appellant well. She questioned why appellant was not treated for his problems before
things got out of control and Gongaware indicated the system had budget concerns. Dr.
Pascua-Lim, however, believed that appellant was never treated because of his ability to
maintain employment and manage his finances. 

Helga Gongaware, MHMR Human Rights Officer


 Appellant spent approximately 20 years receiving services from the Mental Health
Mental Retardation Department. Although Gongaware was never assigned to appellant
as a case manager or service coordinator, she had frequent contact with him regarding his
progress. After he was arrested in the underlying case, she became a client advocate for
him. She testified for him at the suppression hearing to shed light on his mental
retardation. She initiated several communications with trial counsel and telephoned
several times, although her calls were not returned. In her opinion, appellant's life history
was relevant to the jury in assessing punishment. 


Jeff Nicholson, Trial Counsel


 Counsel's defense strategy was to suppress appellant's statements due to
overreaching by the detective and convince the jury that the victims had concocted the
abuse allegations. The motion to suppress was denied. Acknowledging that trial strategy
is gauged by reasonableness, counsel testified that in his experience, mitigating evidence
is useful when attempting to show that a good person has committed a bad act. He did
not, however, want to pursue mitigating evidence that could do more harm to appellant
than good, especially during punishment, when the State could offer almost any evidence. 

 Counsel designated Dr. Pascua-Lim, a psychiatrist, as an expert witness to testify
on appellant's mental condition and other matters. She had previously evaluated
appellant's competency to stand trial and found as a risk assessment that if the aggravated
sexual assault was proven, it was a "past history of behavior that [would] definitely be a
factor to consider in assessing future risk of harming others." In reviewing three reports
she prepared on appellant's competency, counsel testified he made a strategic decision
not to call her as a witness for fear that cross-examination might reveal harmful
information. 

 Counsel did communicate with Helga Gongaware who was familiar with appellant
through his MHMR services. Counsel believed that Gongaware thought of appellant as a
"nice guy" who was always eager to please. He made the strategic decision not to call her
during punishment because he was apprehensive she might open the door for the State
to pursue extraneous offenses.

 Counsel's strategy in not presenting evidence of appellant's mental retardation was
that his condition was apparent to the jury. He also believed that appellant's mental
retardation was not an excuse for his conduct and would not elicit sympathy from a jury.

 Counsel testified that appellant was adamant he not interview his wife nor family
members, except for his brother, Larry. Counsel made several unsuccessful attempts to
contact Larry, and he died before trial. Appellant led counsel to believe his family
members would not be helpful. After trial, counsel spoke with an older brother of
appellant's, Ronnie, who claimed that appellant had raped and impregnated his daughter. 
Although counsel learned this after trial, it confirmed his opinion that testimony from
appellant's family members would have been highly prejudicial.

 By his first two issues, appellant contends counsel's failure to investigate, obtain,
and present mitigating evidence during the punishment phase denied him his constitutional
right to effective assistance of counsel. We disagree. A claim of ineffectiveness at the
punishment phase is reviewed under the standard set out in Strickland v. Washington, 466
U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 988 S.W.2d
770, 771-72 (Tex.Cr.App. 1999). Under Strickland, a defendant must establish that (1)
counsel's performance was deficient (i.e., fell below an objective standard of
reasonableness), and (2) there is a reasonable probability that but for counsel's deficient
performance, the result of the proceeding would have been different, a reasonable
probability being a probability sufficient to undermine confidence in the outcome. 
Strickland, 466 U.S. at 690-94. See also Rylander v. State, 101 S.W.3d 107, 110
(Tex.Cr.App. 2003); Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Cr.App. 1986). In other
words, appellant must demonstrate by a preponderance of the evidence that the deficient
performance prejudiced his defense. Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Cr.App.
2002); Thompson v. State, 9 S.W.3d 808, 813 (Tex.Cr.App. 1999). Failure to make the
required showing of either deficient performance or sufficient prejudice defeats the
ineffectiveness claim. Thompson, 9 S.W.3d at 814, citing Strickland, 466 U.S. at 700.

 The adequacy of defense counsel's assistance is based upon the totality of the
representation rather than by isolated acts or omissions of trial counsel. Id. Although the
constitutional right to counsel ensures the right to reasonably effective counsel, it does not
guarantee errorless counsel whose competency or accuracy of representation is to be
judged by hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984); see also
Ex Parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). Appellate review of trial
counsel's representation is highly deferential and presumes that counsel's conduct fell
within the wide range of reasonable and professional representation. See Andrews v.
State, 159 S.W.3d 98, 101 (Tex.Cr.App. 2005). See also Bone v. State, 77 S.W.3d 828,
833 (Tex.Cr.App. 2002).

 Judicial scrutiny of counsel's performance must be highly deferential. Strickland,
466 U.S. at 689. It is all too tempting to second-guess counsel's assistance after
conviction or adverse sentence, and it is all too easy for a court examining counsel's
defense after it has proved unsuccessful to conclude that a particular act or omission of
counsel was unreasonable. Id. Strategic choices made after thorough investigation of law
and facts relevant to plausible options are virtually unchallengeable; and strategic choices
made after less than complete investigation are reasonable precisely to the extent that
reasonable professional judgments support the limitations on investigation. Id. at 690-91. 
In any ineffectiveness claim, a decision not to investigate must be directly assessed for
reasonableness. Id. at 691. See also Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct.
2527, 156 L.Ed.2d 471 (2003).

 The voluminous record sheds light on appellant's family and social history. He has
numerous siblings, but did not have an ideal childhood. The brother he was closest to
died before trial. Appellant suffered a severe head injury at a young age that caused him
to experience seizures. He did not finish high school, and at age 17 was admitted to a
State hospital where he resided until 1987. He received services from the Department of
Mental Health and Mental Retardation for approximately two decades. He was 
hospitalized in 1992 for suicidal ideation and depression following an allegation of sexual
assault by a teenage girl. He has abused alcohol since he was 13 and also uses
marihuana, both of which affect the brain, especially in someone with intellectual
dysfunction.

 To support his ineffective assistance claim, appellant relies on recent United States
Supreme Court decisions involving assessment of death sentences. He also relies on the
ABA Standards for Criminal Justice, which the Court applies in determining
reasonableness. (1) In Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360
(2005), the Court found counsel deficient in failing to investigate the court file on the
defendant's prior convictions because counsel knew the prosecution was seeking the
death penalty by using violent prior convictions to prove aggravating factors. According
to the Court, counsel compromised the opportunity to respond to a case for aggravation. 
Id. at 2465. In the underlying case, the State only presented two witnesses whose
testimony was limited to appellant having a bad reputation as a law abiding citizen. No
aggravating evidence was presented by the State that required counsel to respond. 
Additionally, counsel explained that his trial strategy in not presenting mitigating evidence
was to prevent harmful cross-examination.

 A significant decision relied on by appellant is Wiggins v. Smith, 539 U.S. 510, 123
S.Ct. 2527, 156 L.Ed.2d 471 (2003). In Wiggins, the Court found trial counsel ineffective
for failing to discover and present powerful mitigating evidence of appellant's troubled
history. Counsel's limited investigation fell short of the prevailing professional standards. 
During her opening statement counsel told the jury it would hear of the defendant's difficult
life but failed to introduce any evidence thereof during the proceedings. In assessing the
reasonableness of counsel's failure to conduct a thorough investigation, the Court found
it resulted from inattention and abandonment of the investigation at an unreasonable
juncture, and not from reasoned strategic judgment. Id. at 524-527. See generally Ex
parte Woods, 176 S.W.3d 224, 226-27 (Tex.Cr.App.2005) (denying habeas corpus relief
based on applicant's claim of ineffective assistance of counsel because counsel's decision
not to pursue certain mitigating evidence that would have been subject to cross-examination was based on "reasonable professional judgments [supporting] the limitations
on investigation.")

 A third decision relied on by appellant is Williams v. Taylor, 529 U.S. 362, 120 S.Ct.
1495, 146 L.Ed.2d 389 (2000). In sustaining Williams's ineffective assistance claim, the
Court found that counsel failed to investigate and present substantial mitigating evidence
during sentencing proceedings. Id. at 363. According to the record, counsel began
preparing for sentencing a week beforehand and failed to discover extensive records of
the defendant's "nightmarish childhood," his borderline mental retardation, and favorable
evidence demonstrating that Williams had received commendations for helping crack a
prison drug ring and for returning a guard's wallet. Id. at 396. Counsel was also
ineffective in failing to discover testimony from prison officials that Williams was least likely
to act violently or dangerously among inmates and testimony from a prison minister that
Williams thrived in a more regimented and structured environment. Id. The Court found
that failure to introduce favorable evidence was not the result of a tactical decision to
focus on Williams's confession. Id. 

 We distinguish Williams for several reasons. First, there is no evidence in our
record that trial counsel waited until shortly before the sentencing phase to begin
preparing. Additionally, except for appellant's employment and ability to manage his
finances, no positive mitigating evidence was presented at the motion for new trial hearing
that might have impacted the jury's assessment of punishment. 

 Counsel in the underlying case supported his strategic decision not to pursue a
mitigation case out of concern that more harm than good would result. Although he
designated Dr. Pascua-Lim as an expert, he did not follow through because cross-examination might have disclosed prejudicial information. He made a strategic choice not
to interview family members or co-workers at his client's insistence, which later proved to
be reasonable. When a defendant gives counsel reason to believe that pursuing certain
investigations may be more harmful than useful, counsel's failure to pursue those
investigations may not later be challenged as unreasonable. Strickland, 466 U.S. at 690-91. In short, inquiry into conversations between counsel and his client may be critical to
a proper assessment of counsel's strategic choices. Id. 

 Testimony from an inexperienced law school graduate and a non-lawyer that a jury
was entitled to presentation of appellant's entire life should not outweigh counsel's
strategic decision based on his experience in these type cases in the Lubbock community. 
Neither should another attorney's opinion on how he would have defended the case be
applied under these facts to find trial counsel's choices were unreasonable. 

 Strickland does not require trial counsel to investigate every conceivable line of
mitigating evidence nor present mitigating evidence. Wiggins, 539 U.S. at 512. The jury's
assessment of four life sentences in the underlying case does not authorize this Court to
judge counsel's performance in hindsight. See Ingham, 679 S.W.2d at 509. Appellant
has not satisfied his burden that based on the totality of counsel's representation any
identified acts or omissions were outside the wide range of reasonable and professional
representation. Applying a heavy measure of deference to counsel's judgments, we
conclude his strategic choice in making a less than complete investigation was based on
reasonable professional judgments supporting the limitations on investigation. Id. Issues
one and two are overruled.

 By his remaining four issues, appellant contends the trial court erred in denying his
motion for expert assistance filed pursuant to article 26.05 of the Texas Code of Criminal
Procedure. We disagree. Article 26.05(d) provides that appointed counsel in a noncapital
case shall be reimbursed for reasonable and necessary expenses incurred with prior court
approval, including expenses for mental health and other experts. The decision to appoint
an expert under the statute lies within the sound discretion of the trial court. Stoker v.
State, 788 S.W.2d 1, 16 (Tex.Cr.App. 1989), cert. denied, 498 U.S. 951, 111 S.Ct. 371,
112 L.Ed.2d 333 (1990). 

 Appointment of an expert is required when a defendant makes a preliminary
showing of a significant issue of fact on which the State would present expert testimony
and which the knowledge of a lay jury would not be expected to encompass. Rey v. State,
897 S.W.2d 333, 339 (Tex.Cr.App. 1995). A trial court does not err in refusing to appoint
an expert witness to assist an indigent defendant in rebutting a type of expert opinion that
the State did not present. Jackson v. State, 992 S.W.2d 469, 474 (Tex.Cr.App. 1999). 

 By his motion for expert assistance, appellant requested authorization for expenses
of a registered sex offender therapist. He provided the expert's curriculum vitae and an
estimate of his fees and expenses. He alleged the expert would be crucial in establishing
trial counsel's ineffectiveness in not presenting mitigating evidence. He further alleged
the expert's testimony on appellant's manageability as a sex offender would have
impacted the jury's decision. 

 The motion was supported by an investigator's affidavit in which he averred he had
reviewed trial records and appellant's psychiatric records. He believed appellant's
evaluating psychiatrist, who was unavailable to sign an affidavit, could have provided
relevant mitigating evidence. He also recommended evaluation by a registered sex
offender therapist for candidacy for probation. No affidavit from a sex offender therapist
nor any other evidence indicating the need for funds for such an expert was provided. 

 The only expert witnesses presented by the State during the guilt/innocence phase
were the forensic interviewer who interviewed the two young victims and the sexual
assault nurse who examined them. The State did not offer any expert evidence on sex
offender programs. Appellant failed to make a preliminary showing of a significant fact
on which the State would present expert sex offender evidence.

 Additionally, we have concluded that trial counsel was not ineffective in deciding
not to present a mitigation case. Thus, the trial court did not abuse its discretion in
denying appellant's motion for authorization of expenses for a sex offender therapist. 
There being no error, appellant's constitutional rights were not violated. Issues three, four,
five, and six are overruled. 

 Accordingly, the trial court's judgments are affirmed.

 Don H. Reavis

 Justice


Do not publish.
1. Paragraph 4-4.1 of the ABA Standards provides in part:


 Defense counsel should conduct a prompt investigation of the circumstances
of the case and explore all avenues leading to facts relevant to the merits of
the case and the penalty in the event of conviction. The investigation should
include efforts to secure information in the possession of the prosecution and
law enforcement authorities. The duty to investigate exists regardless of the
accused's admissions or statements to defense counsel of facts constituting
guilt or the accused's stated desire to plead guilty.