**Opinion issued August 9, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00897-CR

————————————

**ENRIQUE CHAVEZ AGUIRRE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case No. 950986**

---

## MEMORANDUM OPINION

A jury convicted Enrique Chavez Aguirre of aggravated sexual assault of a child under 14 years of age. *See* TEX. PENAL CODE § 22.021(a)(1)(B). The court assessed punishment at 30 years' imprisonment. On appeal, Aguirre argues that he

should have been granted a new trial due to his trial counsel's failure to assert his Sixth Amendment right to a speedy trial.

Finding no reversible error, we affirm the trial court's judgment.

## Background

Appellant Enrique Chavez Aguirre is a Mexican citizen. In 2003, he lived in Houston with his girlfriend. Four children lived in the house with them: Aguirre's son, Enrique Jr., and his girlfriend's three children, one of whom is the complainant in this case. One day the complainant, who was 11 years old at the time, reported to a friend and to a teacher that Aguirre had touched her inappropriately. The school reported the incident, and Child Protective Services brought the complainant to the Children's Assessment Center for an interview and medical exam. At this interview, the complainant disclosed that on more than one occasion Aguirre had placed his mouth on her vagina, and he had sexually assaulted her sister. Aguirre was charged with aggravated sexual assault of a child, but he disappeared soon after the complainant reported the incident.

In 2013, Aguirre was arrested pursuant to the 10-year-old warrant. Aguirre's trial counsel did not object to the lack of a speedy trial, and the factual circumstances of the arrest were not discussed at trial. The jury found Aguirre guilty of aggravated sexual assault of a child under 14 years of age. Enrique Jr. testified during the punishment stage on behalf of his father. After the accusations

2

were originally made against his father, Enrique Jr. moved to Mexico with his uncle, and he did not see his father while living there. The court imposed a sentence of imprisonment for 30 years.

Aguirre filed a motion for new trial, asserting among other issues that his trial counsel was ineffective for not raising a speedy-trial claim. The motion included an affidavit from Enrique Jr. stating that Aguirre had applied to renew his permanent residency card in 2012 and was unaware of the pending indictment against him. This affidavit stated that in November 2012, Aguirre hired an immigration attorney from McAllen, Texas. It did not definitively state whether Aguirre met with the attorney in person. Also attached to the motion were an immigration appointment notice for December 28, 2012 in Las Vegas, Nevada, and a copy of the approved residency card, which was in the name of Enrique Aguirre Chavez, rather than Enrique Chavez Aguirre.

The trial court held a hearing on this motion. The only witness was Aguirre's trial counsel. Trial counsel admitted after examination by Aguirre's appellate counsel that he had not researched the law relating to the right to a speedy trial for this case, beyond examining one Supreme Court opinion. He also testified that he had been a criminal lawyer for 32 years, and he had represented clients in roughly 300 trials.

Trial counsel further testified that after speaking to his client and his family, he understood that Aguirre intentionally left Harris County and fled to Mexico after the charges were filed in 2003. Trial counsel stated that he did not elicit testimony on this subject because he did not want to open the door to cross-examination as to why Aguirre left the country. In response to the suggestion that Aguirre may have been living in Nevada or Texas at some point during the 10 years that the warrant was pending, trial counsel testified that he "had no knowledge from anybody that he . . . was living in Henderson, Nevada, or that he was living [in] the United States at all during this time." Counsel went on to explain that, based on his conversations with Aguirre and his brother, he did not believe that a speedy-trial claim was a "meritorious defense" for this case and his decision not to pursue the claim was a strategic one.

The trial court denied the motion for new trial and read its findings of fact and conclusions of law into the record. The court concluded that trial counsel's decision not to litigate the speedy-trial issue "was based upon reasonable trial strategy" and was made with sufficient knowledge of the relevant law. The court also found that trial counsel did not have any knowledge or information that Aguirre lived in the United States at any time between his 2003 indictment and his 2013 arrest.

The trial court briefly analyzed the factors involved in the analysis of a speedy-trial claim and found that they were not satisfied. The court found that the reason for the delay between the indictment and arrest was that Aguirre "left the jurisdiction to avoid arrest and prosecution for the offenses" in question and that he did not timely assert his right to a speedy trial or show prejudice. The trial court also found that there was no evidence of negligence on the part of the State in the delayed arrest, because the name on the immigration documents was "Enrique Aguirre Chavez" rather than Enrique Chavez Aguirre. The trial court concluded that trial counsel's performance was not deficient and that had the speedy-trial issue been raised, the trial's outcome would not have been different. Aguirre appealed.

**Analysis**

On appeal, Aguirre asserts that his trial counsel's failure to litigate a speedy-trial claim for his case was ineffective assistance of counsel. He further contends that the trial court erred in denying his motion for new trial on that basis. These two issues are effectively the same for the purposes of our review. Because Aguirre made his claim of ineffective assistance of counsel in a motion for new trial, this court must determine whether the trial court erred by denying that motion. *See Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Lopez v. State*, 428 S.W.3d 271, 278 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). An

5

appellate court reviews a trial court's denial of a motion for new trial for abuse of discretion, and it will only reverse if the trial judge's opinion was "clearly erroneous and arbitrary." *Riley*, 378 S.W.3d at 457. The appellate court must view all evidence in the light most favorable to the trial court's ruling and presume that the trial court made all reasonable factual findings in support of the ruling that are supported by the record. *State v. Thomas*, 428 S.W.3d 99, 104 (Tex. Crim. App. 2014). This court cannot substitute its own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Riley*, 378 S.W.3d at 457.

This court also must give deference to the trial court's determination of historical facts when based solely on affidavits, regardless of whether the affidavits are controverted. *Id.* "The trial court is free to disbelieve an affidavit, especially one unsupported by live testimony." *Id.* When there is a mixed question of law and fact that turns on "an evaluation of credibility and demeanor," the trial court's findings are entitled to almost total deference. *Id.* at 458.

The Sixth Amendment does not require merely that a criminal defendant have an attorney appointed, but that the lawyer also gives reasonably effective assistance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In order to demonstrate that trial counsel was ineffective, an appellant must demonstrate that: "1) trial counsel's performance was deficient because it fell

6

below an objective standard of reasonableness; and 2) a probability sufficient to undermine confidence in the outcome existed that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rylander v. State*, 101 S.W.3d 107, 109–10 (Tex. Crim. App. 2003).

A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Nava v. State*, 415 S.W.3d 289, 307–08 (Tex. Crim. App. 2013). An appellant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Ex parte Ellis*, 233 S.W.3d 324, 330 (Tex. Crim. App. 2007) (quoting *Miniel v. State*, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992)). The mere fact that an attorney identifies a particular strategy does not prevent us from determining that a specific act or omission was outside the range of competent assistance. *See id.* However, reviewing courts must "avoid the deleterious effects of hindsight" and find deficient performance only when "no reasonable trial attorney would pursue such a strategy under the facts" of a case. *Id.* at 330–31.

Trial counsel has a duty to become acquainted with the facts of the case and conduct a reasonable investigation. *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066; *Ex parte Lilly*, 656 S.W.2d 490, 493 (Tex. Crim. App. 1983) ("It is fundamental

7

that an attorney must have a firm command of the facts of the case as well as the law before he can render reasonably effective assistance of counsel."). "*Strickland* does not require defense counsel to investigate each and every potential lead" but it does require a strategic decision based on a "thorough understanding of the available evidence." *Ex parte Woods*, 176 S.W.3d 224, 226 (Tex. Crim. App. 2005); *see also Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527 (2003).

A speedy trial is guaranteed to the accused by the Sixth and Fourteenth Amendments to the Constitution, and the sole remedy when the accused is deprived of this right is dismissal. *See Barker v. Wingo*, 407 U.S. 514, 522, 92 S. Ct. 2182, 2188 (1972). A determination of whether a defendant has been deprived of this right requires the weighing and balancing of four factors identified by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972): "1) length of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the accused." *Id.* at 530, 92 S. Ct. at 2192; *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

The State generally bears the burden of justifying the length of the delay between accusation and trial, while the defendant must prove the assertion of the right and show prejudice. *Cantu*, 253 S.W.3d at 280. The greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a

speedy trial. *Id.* at 280–81. An appellant's "failure to diligently and vigorously seek a rapid resolution [to the prosecution] is entitled to 'strong evidentiary weight.'" *Id.* at 284 (quoting *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192).

Aguirre argues on appeal that trial counsel did not conduct a reasonable investigation of the facts or law relating to his potential speedy-trial claim. He asserts that the immigration documentation shows that he had contact with the federal government, and that the affidavit attached to the motion for new trial proves that Aguirre visited his son in McAllen, Texas. Aguirre suggests that this shows that the State was negligent in its attempts to find him and bring him to trial. He asserts that this combined with the inherent prejudice in the 10-year delay would have led to a successful speedy-trial claim if trial counsel had pursued one.

However, the trial court made explicit factual findings that directly controverted the premises of this argument. The trial court found that Aguirre left the jurisdiction to avoid prosecution, and it determined that there was no evidence in the record of the circumstances of his arrest or where he was living during the 10-year period. Aguirre's name was different on his immigration documents, and the court found that this (rather than the State's negligence) was one of the causes of the delay in arresting him. Because these findings of historical fact are supported by the record, we must defer to them. *See Thomas*, 428 S.W.3d at 103–04.

In its ruling on the motion, the trial court also determined several mixed questions of fact and law which turned on its evaluation of "credibility and demeanor." *Riley*, 378 S.W.3d at 458. Key among these was its finding that trial counsel's decision not to pursue a speedy-trial claim was a reasonable strategic decision. Because Aguirre did not litigate a speedy-trial claim, this court cannot review that claim on the merits. *See* TEX. R. APP. P. 33.1. However, an examination of how the *Barker* factors could apply to this case is helpful in determining whether any reasonable attorney would choose not to assert a speedy-trial claim, and as a result whether the record supports the trial court's findings that counsel was not deficient.

The first *Barker* factor—length of the delay—would weigh in Aguirre's favor. As acknowledged by the trial court, a delay of 10 years is presumptively prejudicial. *See Cantu*, 253 S.W.3d at 281 (noting that while there is no set time element that triggers the analysis, a 17-month delay has been found presumptively prejudicial). The second *Barker* factor—the reason for the delay—is not supported by any evidence suggesting that it would be in Aguirre's favor. There is nothing in the record on this subject, and any conjecture about the State's role in the delay would be purely hypothetical. *See Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. The third *Barker* factor—assertion of the right—is undermined by the trial court's finding, which is supported by the record, that Aguirre told trial counsel that he

10

intentionally left the country to avoid prosecution. This fact seriously impedes Aguirre's speedy-trial claim, as it would show that rather than "vigorously seek[ing] a rapid resolution" to the indictment, he instead deliberately frustrated the State's attempts to prosecute him. *See Cantu*, 253 S.W.3d at 284. Trial counsel's stated concern about opening the door to damaging information that the State could later use in trial also was reasonable under these circumstances.

Finally, the fourth *Barker* factor—prejudice to the accused—must be analyzed "in light of the defendant's interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired." *Cantu*, 253 S.W.3d at 285. Because Aguirre was not imprisoned during the delay, and according to his own affidavit he was not aware of the indictment, neither of the first two rights are implicated here. *See id.* To the extent Aguirre asserts that the delay itself is a prima facie showing of prejudice that the State was required to rebut regardless of whether he presented evidence, *see Dragoo v. State*, 96 S.W.3d 308, 316 (Tex. Crim. App. 2003), we note that the "presumption of prejudice to the defendant's ability to defend himself is 'extenuated . . . by the defendant's acquiescence' in the delay." *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (quoting *Doggett v. United States*, 505 U.S. 647, 658, 112 S. Ct. 2686, 2694 (1992)). If the trial court had found that

11

Aguirre acquiesced in the delay by evading prosecution, the presumption of prejudice in this case would have been extenuated. It is also uncertain what evidence the State would have adduced to rebut any further argument of prejudice, as both at trial and on appeal the State was required to respond only to Aguirre's claim of ineffective assistance of counsel, and not his potential Sixth Amendment speedy-trial claim.

Even assuming the first two *Barker* factors were highly favorable to Aguirre, the third factor would weigh heavily against him and open the door to potentially damaging information, and it is far from clear that the fourth factor would work in his favor. *See id.*; *Cantu*, 253 S.W.3d at 285. The uncertain success of the claim and its possible negative effects on the trial as a whole would be enough to prevent a reasonable attorney from pursuing a speedy-trial claim. A reasonable view of the record supports the trial court's conclusion that trial counsel's decision not to pursue a speedy-trial claim was a matter of reasonable trial strategy and not deficient performance.

Aguirre's argument that trial counsel's "incomplete" investigation renders his strategic decision deficient is unavailing. While trial counsel has a duty to research the facts and law when making a strategic legal decision, counsel is not required "to investigate each and every potential lead." *Woods*, 176 S.W.3d at 226. Trial counsel's testimony, which the trial court found credible, stated that he spoke

with both Aguirre and other family members. None of them suggested that Aguirre was living in the United States after the warrant was issued, and Aguirre himself admitted that he fled to Mexico in response to the charges.

The only evidence presented that Aguirre was living in the United States at any time after charges were filed came from his son's affidavit, which the trial court was free to disbelieve. *See Riley*, 378 S.W.3d at 457. In any case, that information was not provided to trial counsel at a time when he could consider its implications for a potential speedy-trial defense. The record supports the trial court's conclusion that trial counsel's investigation of the facts was within the standard of "prevailing professional norms." *See Ellis*, 233 S.W.3d at 330. To require counsel to have searched for the specific, hard-to-find documents that would contradict his client's own statements would be to judge him on the basis of hindsight rather than whether he provided reasonably competent assistance. *See id.*; *Woods*, 176 S.W.3d at 226.

Aguirre also argues that because trial counsel did not research the law regarding the speedy-trial right in connection with this specific case, his strategic decision was unsound because it was not based on a firm grasp of the law. During the hearing, trial counsel was asked if he had read several cases relating to the speedy-trial right; trial counsel stated that he had read only *Barker v. Wingo*. The trial court found that this, combined with trial counsel's knowledge of the facts,

was sufficient for him to make a strategic decision based on the *Barker* factors. *See Barker*, 407 U.S. at 530–32, 92 S. Ct. 2182 at 2192–93. Because the *Barker* factors control the analysis, a "reasonable view of the record could support the trial court's ruling" that trial counsel performed a sufficient legal and factual investigation, and thus, the court did not abuse its discretion. *Riley*, 378 S.W.3d at 457; *Lopez*, 428 S.W.3d at 282.

In sum, rather than a situation in which "no reasonable attorney would pursue" the same strategic course as Aguirre's trial counsel, the record supports the trial court's determination that the challenged omission in this case was "sound trial strategy." *Ellis*, 233 S.W.3d at 330–31. Viewing all evidence in favor of the trial court's ruling, we conclude that trial counsel's decision not to pursue a speedy-trial claim was a reasonable and valid legal strategy, and thus no basis for an ineffective assistance claim. *See id.* at 330; *Riley*, 378 S.W.3d at 457. Aguirre has not alleged any other reason for trial counsel's ineffectiveness on appeal, and he has not raised any other reason to reverse the lower court's ruling on his motion for new trial.

We conclude that the trial court did not err by denying Aguirre's motion for new trial because Aguirre's trial counsel was not deficient in his decision not to litigate a speedy-trial claim. We overrule Aguirre's argument on appeal.

14

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).