

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. AP-76,455

**EX PARTE ARTHUR LEE WILLIAMS, Applicant**

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS FROM HARRIS COUNTY

**ALCALA, J., filed a dissenting opinion in which JOHNSON, J., joins.**

### DISSENTING OPINION

I respectfully dissent because I would grant applicant, Arthur Lee Williams, a new trial on punishment for two reasons. First, the Texas death-penalty scheme effective at the time of applicant's trial was unconstitutional as applied to him because it did not allow the jury to consider mitigation evidence that he presented at trial. Second, applicant's trial counsel rendered ineffective assistance by failing to investigate and present mitigation evidence that differed in character and strength from evidence presented at trial and that

substantially altered the sentencing profile that was before the jury. I would sustain applicant's thirteenth and fifteenth issues, grant relief, and order a new trial on punishment.

## I. Background

Applicant shot and killed a Houston police officer who, in the line of duty, was attempting to arrest applicant on a fugitive warrant for parole violations. Applicant refused to follow the officer's commands and shot him twice with a gun that applicant illegally carried. At the time of the offense, applicant had unlawfully fled from a halfway house in Minnesota in violation of his parole conditions. He had an extensive criminal history, including convictions for two aggravated robberies, aggravated criminal damage to property, and attempted escape from the county jail.

At the guilt phase of trial, applicant's attorney presented testimony that the jury could have viewed as favorable of applicant's character. Applicant testified about his interest in furthering his education. While he was in prison, he received a high-school-equivalency diploma and some college credits. After moving to Houston, he attempted to take classes at Texas Southern University, but lacked the necessary records to enroll. Applicant also briefly described his relationship with members of his family, who were helping him after he moved to Houston. He testified that his sister, Linda Ransome, let him stay at her apartment without having to pay rent, and his three sisters in Minnesota would send him money because he had not been able to find a job after he moved to Houston. Applicant also presented evidence that he was remorseful about having shot a police officer. Applicant's friend, Valerie Sudduth,

testified that, when applicant saw a televised news report confirming that the person he had shot was a police officer, applicant said, "Oh, it really was a policeman." Sudduth explained that applicant was "crying uncontrollably," "apologizing," and "really upset."

At the punishment phase of trial, applicant's attorney did not present witnesses or evidence of any kind. During punishment-phase closing arguments, neither applicant's counsel nor the State mentioned mitigation evidence; they focused on whether applicant's conduct was deliberate and whether he posed a future danger to society.

## II. The 1983 Death-Penalty Scheme Was Unconstitutional as Applied to Applicant

In his fifteenth ground for relief, applicant alleges that the Texas death-penalty scheme effective at the time of his trial in 1983 was unconstitutional as applied to him because it imposed a mandatory death sentence even if the jury believed that applicant did not deserve to die. Applicant cites *Lockett v. Ohio*, 438 U.S. 586, 605 (1978), for the proposition that, at the punishment stage of a capital-murder trial, the jury may not be precluded "from giving independent mitigating weight to . . . circumstances of the offense proffered in mitigation[.]" He also cites *Penry v. Lynaugh*, 492 U.S. 302, 328 (1989) (*Penry I*), to support his contention that the jury must be given a vehicle for expressing its "reasoned moral response" to evidence in rendering its sentencing decision. The trial court disagreed and concluded that the Supreme Court has consistently upheld the constitutionality of the

Texas death-penalty scheme.[1] However, I find that the trial court's conclusion is not supported by the law or record.

**A. The Constitution Requires Meaningful Consideration of Mitigation Evidence**

In *Penry I*, decided in 1989, the Supreme Court held that, when a defendant places mitigating evidence before a jury in Texas, the jury must be given instructions that allow the jurors to give full effect to that mitigating evidence and to express a reasoned moral response to it in deciding whether to impose the death penalty. *See Penry I*, 492 U.S. at 328; *see also Abdul-Kabir v. Quarterman*, 550 U.S. 233, 244 (2007). But even before *Penry I*, the Supreme Court required that a jury be permitted to meaningfully consider mitigation evidence. *See Abdul-Kabir*, 550 U.S. at 247-48. The Court recently explained,

> A careful review of our jurisprudence in this area makes clear that well before our decision in *Penry I*, our cases had firmly established that sentencing juries must be able to give meaningful consideration and effect to all mitigating

---

[1] In its Conclusion of Law No. 29, the trial court stated,

The applicant fails to [sic] that the Texas death penalty scheme, as applied to him, in [sic] unconstitutional; the United States Supreme Court has consistently and repeatedly held that the Texas death penalty scheme is constitutional. *Jurek v. Texas,* [428] U.S. 262, 271-72, 96 S.Ct. 2950, 2956 (1976); *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320 (1989); *Graham v. Collins,* 506 U.S. 461, 113 S.Ct. 892 (1989); *Johnson v. Texas,* 509 U.S. 350, 113 S.Ct. 2658 (1993); *see also Smith v. State,* 779 S.W.2d 417, 420 (Tex. Crim. App. 1989)(quoting *Jurek v. State,* 522 S.W.2d 934, 939)(noting that Court has consistently held Texas death penalty scheme adequately narrows the class of death-eligible defendants); *Cockrell* [*v. State*], 933 S.W.2d [73, 92-93 (Tex. Crim. App. 1996)] (holding that even with the addition of the mitigation special issues, enacted after *Penry* decision, "Texas' death penalty scheme continues to narrow the class of 'death-eligible' defendants while also providing a jury with more discretion than it had under Texas' prior statutory scheme to decline to impose the death penalty.'").

evidence that might provide a basis for refusing to impose the death penalty on a particular individual, notwithstanding the severity of his crime or his potential to commit similar offenses in the future.

*Id*. at 246. It stated that *Penry I* was premised on "background principles" from cases the Court decided in 1976 and that *Penry I* did not formulate a "new rule." *Id*. at 246-248 (citing *Woodson v. North Carolina*, 428 U.S. 280 (1976); *Proffitt v. Florida*, 428 U.S. 242 (1976); *Jurek v. Texas*, 428 U.S. 262 (1976)). Rather, "*Penry I* was merely an application" of the rule settled in earlier cases, including *Lockett*. *Id*. at 265 n.24 (describing "the *Lockett-Eddings-Hitchcock* rule," citing *Lockett*, 438 U.S. 586; *Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Hitchcock v. Dugger*, 481 U.S. 393 (1987)).

In 1978, the Supreme Court decided *Lockett*, holding that a jury must not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for imposing a sentence less than death. *Lockett*, 438 U.S. at 605. This means that no aspect of a sentencing process may prevent a jury from giving evidence "meaningful consideration." *Abdul-Kabir*, 550 U.S. at 250. "[C]ases following *Lockett* have made clear that when the jury is not permitted to give meaningful effect or a 'reasoned moral response' to a defendant's mitigating evidence—because it is forbidden from doing so by statute or a judicial interpretation of a statute—the sentencing process is fatally flawed." *Id*. at 264. After *Lockett*, Ohio amended its capital-sentencing statute to give effect to *Lockett*'s holding. *Id*. at 248. But Florida and Texas did not do so until 1987, when the Supreme Court

"unequivocally confirmed the settled quality of the *Lockett* rule." *Id*. (referring to *Hitchcock*, 481 U.S. at 397).

The Constitution requires more than introduction of mitigation evidence. *See id*. at 250 n.12. The Supreme Court has explained, "[T]hat such information [is] merely [] before the jury" is constitutionally insufficient: The jury must also be able to appreciate the mitigative significance of, and give effect to, that information. *Id*. A sentencing process that allows a jury to consider only aggravating circumstances falls short of providing the individualized sentencing determination that the Supreme Court has held the Eighth and Fourteenth Amendments require. *See Jurek*, 428 U.S. at 271; *Lockett*, 438 U.S. at 602; *Penry I*, 492 U.S. at 316. A jury must be allowed to consider, on the basis of all relevant evidence, not only why a death sentence should be imposed, but also why it should not be imposed. *See Jurek*, 428 U.S. at 271.

Whether the Constitution requires a specific mitigation instruction separate from the other special issues depends on the nature of the evidence. *See Abdul-Kabir*, 550 U.S. at 256-57. In *Penry I*, the absence of a mitigation special issue meant that the jury could not have meaningfully considered evidence that Penry suffered mental retardation, arrested emotional development, and a troubled youth. *Id*. at 255 (citing *Penry I*, 492 U.S. at 324). Similarly, in *Abdul-Kabir v. Quarterman*, the jury could not have meaningfully considered evidence of the petitioner's childhood deprivation and lack of self-control in the absence of a mitigation special issue. *Id*. at 259. Therefore, depending on the type of mitigation evidence that was

introduced at applicant's trial, the absence of a separate mitigation instruction could amount to a constitutional violation as applied to this case. *See id*.

## B. Mitigating Evidence Introduced at Applicant's Trial Required an Instruction

In its findings of fact, the trial court stated that "applicant fails to show that he possesses mitigating evidence outside the scope of the special issues so that the jury would not have had a vehicle to consider such evidence, if presented." This finding is not supported by the record.

At trial, applicant presented three items of evidence that the jury could have viewed as mitigating: his close relationship with his family, his academic pursuits, and his feelings of remorse.[2] It is unlikely that the first two items would have persuaded the jury to spare his life. The evidence of his close relationship with his family showed a one-way street of applicant's sisters' efforts to house and financially support him after he moved to Houston. No evidence was introduced of any efforts applicant may have made to help his family. Similarly, despite evidence of applicant's academic endeavors, other evidence revealed that he had pursued a life of criminal activity and violence. It is thus improbable that the jury

---

[2] The evidence describing applicant's positive character traits was evidence that a reasonable juror could find mitigates against imposition of the death penalty. *See Franklin v. Lynaugh*, 487 U.S. 164, 186 (1988) (O'Connor, J., concurring) ("Evidence of voluntary service, kindness to others, or of religious devotion might demonstrate positive character traits that might mitigate against the death penalty."); *Williams v. Taylor*, 529 U.S. 362, 369 (2000) (failure to present mitigating evidence prejudicial, including testimony of defendant's good deeds and behavior in prison); *Boggess v. State*, 855 S.W.2d 645, 647 (Tex. Crim. App. 1991) (evidence of defendant's "musical and artistic prowess" mitigating); *Harris v. Dugger*, 874 F.2d 756, 764 (11th Cir. 1989) ("Testimony about the appellant's good character constituted the only means of showing that Harris was perhaps less reprehensible than the facts of the murder indicated.").

would have been dissuaded from imposing the death penalty because applicant was interested in pursuing higher education.

The evidence that applicant felt remorse after having shot a police officer, however, does cast him in a different light. Had the jury believed applicant was remorseful, it could not have meaningfully considered that evidence in assessing his moral culpability due to the absence of a mitigation instruction. Even if it had found the evidence of applicant's remorse credible, the jury would have reasonably determined that applicant had acted deliberately in shooting the police officer twice and that he posed a future danger to society given his extensive criminal history. The absence of a mitigation special issue, therefore, did not permit the jury to meaningfully consider whether applicant's remorse for his actions sufficiently reduced his moral culpability so to warrant a sentence of life rather than death. *See Lockett*, 438 U.S. at 586. Because the jury was not able to consider and give a reasoned moral response to evidence of applicant's remorse, the death-penalty scheme was unconstitutional as applied in this case. *See id*.

The constitutional violation here is the same as that found by the Supreme Court in *Abdul-Kabir*, which reversed this Court's decision in that case. *Abdul-Kabir*, 550 U.S. at 238. In 1988, Ted Cole[3] was convicted of killing a person by strangling him with a dog leash during the course of stealing $20 to purchase beer and food. *Id*. at 238. The trial court sentenced Cole to death after the jury affirmatively answered two special issues that, as here,

---

[3]     Petitioner Abdul-Kabir's "given name" was Ted Cole, by which the Supreme Court refers to him throughout its opinion. *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 237 n.1 (2007).

asked (1) if he caused the complainant's death "deliberately and with the reasonable expectation that the death of the deceased or another would result" and (2) if there is a probability that he "would commit criminal acts of violence that would constitute a continuing threat to society." *Id*. at 238-39. Also, as here, the trial occurred before the Texas Legislature amended the statutory special issues to include an instruction to the jury to decide "[w]hether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant a sentence of life imprisonment without parole rather than a death sentence be imposed." *Id*. at 238 n.2.

The jury did not receive any mitigation instruction in Cole's trial because the trial court refused to grant any of his several requests for mitigation instructions. *Id*. at 242. At the sentencing hearing, the State introduced evidence that Cole was previously convicted of murder and of aggravated sexual assault of two boys, as well as expert testimony that Cole was a sociopath who lacked remorse and could not learn from his experiences. *Id.* at 239. Cole presented two categories of mitigating evidence. *Id*. The first category consisted of testimony from his mother and his aunt, who described his unhappy childhood that was filled with neglect and abandonment. *Id*. at 239-40. The second category came from two expert witnesses—a psychologist and former chief mental health officer for the Texas Department of Corrections—who discussed the consequences of Cole's childhood neglect and

abandonment. *Id*. at 240.

Although recognizing that, in some cases, a jury could consider mitigation evidence in answering the other special issues in the absence of a mitigation special issue, the Supreme Court stated that

> a juror considering Cole's evidence of childhood neglect and abandonment and possible neurological damage or Brewer's evidence of mental illness, substance abuse, and a troubled childhood could feel compelled to provide a "yes" answer to the same question, finding himself without a means of giving *meaningful* effect to the mitigating qualities of such evidence.

*Id*. at 262 (referring to *Brewer v. Quarterman*, 550 U.S. 286 (2007)).

Applicant's case presents many of the same circumstances as *Abdul-Kabir*. *See id*. Here, as in *Abdul-Kabir*, there were many aggravating circumstances that warranted a death sentence, the jury instructions did not include a mitigation instruction, and the mitigation evidence did not show severe abuse or mental retardation. *See id*. The mitigation evidence of applicant's remorse for having shot a police officer could affect the jury in a manner similar to the mitigation evidence showing that Cole had an unhappy childhood filled with neglect and abandonment. *See id*. In either case, it is reasonably probable that a juror, if able to give a "reasoned moral response" to the mitigating evidence, would recommend a sentence of life rather than death. *See id*. Because of the absence of a mitigation instruction that would have enabled the jurors to meaningfully consider mitigating evidence of applicant's personal moral culpability, this was the type of sentencing process that the Supreme Court has characterized as "fatally flawed." *Id*. at 264.

I would sustain the fifteenth ground for relief.

### III. Ineffective Assistance of Counsel

In his thirteenth ground for relief, applicant contends that his trial counsel was ineffective by failing to investigate and present mitigation evidence at the punishment phase of trial. In order to establish ineffective assistance of counsel, applicant must establish the two *Strickland* prongs by showing (1) that counsel's performance was constitutionally deficient and (2) that applicant was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### A. Applicant's Trial Counsel Performed Deficiently

#### 1. Applicable Law

A trial attorney's complete failure to investigate potential mitigation evidence can never constitute reasonable trial strategy. *Rompilla v. Beard*, 545 U.S. 374, 390 n.7 (2005) ("Investigations into mitigating evidence should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.") (internal quotations and emphasis omitted). In contrast to cases involving a complete failure to investigate, a trial attorney may cease his investigation of mitigation evidence, but only when that is a reasonable decision based on a thorough understanding of available evidence. *Ex parte Woods*, 176 S.W.3d 224, 226 (Tex. Crim. App. 2005) ("[*Strickland*] does require attorneys to put forth enough investigative efforts to base their decision not to present a mitigating case on a thorough understanding of the available

evidence.") (citing *Wiggins v. Smith*, 539 U.S. 510, 526, 533 (2003) (deficient performance

where counsel's failure to adequately investigate "resulted from inattention, not reasoned

strategic judgment."); *Strickland*, 466 U.S. at 687).

### 2. Analysis of Record

*a. Failure to investigate and present mitigating evidence*

Applicant's trial counsel admitted the he failed to conduct any investigation into

potential mitigation evidence and explained that he "did not know what it was." In his habeas

affidavit, he stated,

> Before trial, I spent all my time preparing for the guilt stage and did not pay
> any attention to the punishment stage. Accordingly, I did not determine
> whether there was any mitigating evidence to present. . . . I did not conduct a
> mitigation investigation because I did not know what it was. . . . Applicant's
> mother and sister were present and available to testify at the punishment stage.
> Both were very presentable and articulate. They could have testified about
> applicant's positive attributes and asked the jury to spare his life. However, I
> did not call them to testify because I did not think it would do any good.
> Applicant, who is black, had an all white jury. After the jury convicted him of
> capital murder, I felt that the jury would have sentenced him to death no matter
> what evidence I presented or arguments I made. In retrospect, I should have
> conducted a mitigation investigation. I should have called applicant's mother
> and sister to testify, so the jury would know that someone cared about whether
> he lived or died.

Applicant's mother, Joyce Williams, made statements in her habeas affidavit that are

consistent with counsel's representations. She stated that she was present at applicant's trial

and would have testified if called, but counsel "did not interview [her] in depth" about

applicant's background. Applicant's sister, Deborah Williams, similarly stated in her habeas

affidavit that she was available to take the stand at applicant's trial and would have testified

to his difficult upbringing and redeeming qualities.[4]  Furthermore, the trial record is also consistent with counsel's affidavit in that, after the State presented ten witnesses in the punishment phase of trial, applicant's counsel rested without presenting any evidence.

The only evidence with mitigative potential that the jury heard was presented during the guilt phase and only as it related to applicant's defense to the allegations set forth in the charge. First, the State had implied at trial that, after applicant moved to Houston, he could only have been financially supporting himself by committing criminal acts. Apparently to address this suggestion, applicant introduced evidence to explain how he was living in Houston and what he had been doing with his time. He testified that he was living with his sister and that his other sisters were financially supporting him because he had been unable to find a job.  He also explained that he had attempted to enroll at a university but lacked the proper records, despite having obtained his high-school-equivalency diploma and having taken some college courses in prison.

Second, applicant claimed that he did not know, at the time of the offense, that the person he had shot was a police officer because he had been previously robbed by someone who had falsely claimed to be a police officer.  To support his defense that he did not learn that the complainant was a police officer until he saw a televised news report, applicant

---

[4] The trial court found that Joyce and Deborah Williams' affidavits consisted "of limited good character evidence that could have been encompassed by the first and second special issues presented to the jury." However, the trial court made no finding that those affidavits were not credible, lacked sufficient specificity or detail, or were impermissibly vague. The trial court, therefore, did not disagree with the quality of the habeas evidence supplied by applicant's family.

introduced evidence of his post-offense emotional distress and apologies.

The record shows, however, that counsel did not understand that this evidence could be used, not only in support of applicant's defense against the charge, but also in mitigation against the death penalty. During his closing argument at punishment, he never cited this evidence as a basis for the jury to answer the special issues in the negative or to impose a sentence of life rather than death. Counsel's incidental introduction of mitigation-type evidence while defending applicant against the accusation in the guilt phase of trial does not qualify as constitutionally adequate investigation and presentation of mitigation evidence.

This is not a case in which counsel searched for mitigation evidence and made a reasonable professional judgment to cease the search. *Compare Woods*, 176 S.W.3d at 227-28 (counsel had investigated possible mitigating evidence and was "entirely reasonable" in deciding not to present more, as to do so would have opened a "Pandora's Box" of inculpatory evidence). The habeas record conclusively shows that counsel's failure to investigate for mitigation evidence was not a strategic decision. *See id*. at 226; *Wiggins*, 539 U.S. at 526. Counsel admits that, at the time of trial, he did not know what mitigation evidence was and that he paid no attention to the punishment phase of trial. His explanation that he did not investigate or present mitigation evidence because the "all white jury" would have sentenced applicant to death regardless is an impermissible explanation for his conduct.

*See Rompilla*, 545 U.S. at 390 n.7.[5]

### b. Failure to request instruction

Counsel was also ineffective in failing to request a separate instruction that would have enabled the jury to meaningfully consider, and give effect to, any mitigating evidence that had been introduced. In his habeas affidavit, counsel suggests that, in the early 1980s, defense attorneys were unaware of their duty regarding mitigation evidence. He states, "In 1982, defense lawyers did not have much, if any, guidance regarding the type of mitigating evidence that should be offered at the punishment stage of a capital murder trial." It is true that we must evaluate an attorney's performance through the prism of the prevailing professional standards of the time. *See Strickland*, 466 U.S. at 688. Although counsel may not be faulted for failing to request what we now refer to as a "mitigation special issue," he should have known, given then-existing Supreme Court precedent, to request some type of instruction that would enable the jury to consider any evidence with mitigative significance

---

[5] The trial court's conclusion of law suggests that counsel's decisions were based on strategy, but nothing in the record supports that conclusion. Excluding citations to authority, the trial court stated, in conclusion of law number 27, that applicant's counsel

> cannot be considered ineffective for choosing not to present limited good character evidence and evidence of alleged teenage drug usage: evidence that would not have offset the extensive aggravating evidence presented at trial; evidence that does not rise to the level of *Penry*-type evidence; and, evidence that could be considered within the scope of the special issues.

that exceeded the scope of the statutory special issues in deciding applicant's punishment.[6]

Applicant has established the first *Strickland* prong. *See id.* at 687. Applicant, therefore, is

entitled to a new trial on punishment if he can establish that he was prejudiced by that error.

*See id*.

### B. Applicant Was Prejudiced by Counsel's Deficient Performance

In its conclusions of law, the trial court determined that "applicant fails to show

deficient performance, much less harm, based on trial counsel's defensive and punishment

strategy." In support, it cited *Rosales v. State,* 841 S.W.2d 368, 378 (Tex. Crim. App. 1992),

for the proposition that "counsel's decision not to present expert punishment testimony in

order to avoid [the] State's rebuttal and not to elicit more detailed character evidence was not

prejudicial and did not affect [the] reliability of proceedings," as well as *Mercado v. State,*

615 S.W.2d 225 (Tex. Crim. App. 1981), as "holding that reasonably effective assistance of

---

[6]     The majority opinion notes that, in the 1976 *Jurek* opinion, the Supreme Court upheld the constitutionality of the Texas sentencing scheme, which did not then authorize a special mitigation instruction. *See Jurek*, 428 U.S. 262. It concludes that, therefore, "counsel had no reason to believe that a trial court would grant an instruction that was neither authorized by statute nor required by precedent." There are two problems with this rationale. First, a statutory provision that has been held facially constitutional remains subject to an as-applied constitutional challenge. Even in *Jurek*, the Court held that the constitutionality of the Texas scheme "turn[ed] on whether the enumerated questions allow[ed] consideration of particularized mitigating factors." *Id.* at 272.

        Second, the majority opinion fails to acknowledge that, two years after *Jurek*, the Supreme Court decided *Lockett*, in which it held that a sentencing process must enable a jury to meaningfully consider all mitigating evidence. *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). The Court concluded that the Constitution requires "that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id*. Therefore, counsel should have known, in applicant's 1983 trial, to request an struction permitting the jury to consider, as a mitigating factor, evidence of applicant's remorse for

counsel does not require error-free counsel, or counsel whose competency or adequacy is judged by hindsight." I conclude that the record and applicable law do not support this conclusion.

### 1. Applicable Law

In order to establish prejudice, a defendant need not "show 'that counsel's deficient conduct more likely than not altered the outcome' of his penalty proceeding"; rather, he need only "establish 'a probability sufficient to undermine confidence in [that] outcome.'" *Porter v. McCollum*, 130 S. Ct. 447, 455-56 (2009) (per curiam) (quoting *Strickland*, 466 U.S. at 693-94). In the context of this case, a defendant establishes prejudice by showing that the evidence that counsel should have offered at punishment would have substantially altered the "sentencing profile" presented to the jury. *Wiggins*, 539 U.S. at 534; *Williams v. Taylor*, 529

---

having killed a police officer. His failure to do so precluded the jurors from considering evidence that might have served as "a basis for a sentence less than death." *See id.* I conclude that this failure constituted deficient performance under *Strickland*.

Furthermore, the majority opinion cites *Powell v. State* for the proposition that the jury-charge issues may not deviate from the statutory scheme. 897 S.W.2d 307, 314-17 (Tex. Crim. App. 1994), *overruled in part by Prystash v. State*, 3 S.W.3d 522 (Tex. Crim. App. 1999). However, *Powell* holds only that the jury charge must contain the statutory issues, not that the charge may not instruct on additional, non-statutory issues. *Id.* at 314 (holding that trial court's failure to submit "deliberateness" statutory special issue was error).

Finally, I disagree with the majority opinion's assertion that submitting a nullification instruction would have been the only means of enabling the jury to consider and give effect to the mitigation evidence. The Supreme Court has explained that, prior to the Texas Legislature's amendment of the statutory punishment scheme and in lieu of a nullification instruction, a jury charge could have passed constitutional muster by (1) defining "'deliberately' in the first special issue 'in a way that would clearly direct the jury to consider fully [a defendant's] mitigating evidence as it bears on his personal culpability," or (2) including a "clearly drafted catchall instruction on mitigating evidence," as the statute does today. *Penry v. Johnson*, 532 U.S. 782, 803 (2001).

U.S. 362, 397-98 (2000); *Strickland*, 466 U.S. at 699-700. This requires that a defendant's habeas record show new mitigating evidence that differs "in a substantial way—in strength and subject matter—from the evidence actually presented at sentencing." *Ex parte Martinez*, 195 S.W.3d 713, 731 (Tex. Crim. App. 2006); *see also Ex parte Gonzales*, 204 S.W.3d 391, 399 (Tex. Crim. App. 2006). The relevant "'question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1408 (2011) (quoting *Strickland*, 466 U.S. at 695). In considering whether a defendant has shown prejudice, a court must "'reweigh the evidence in aggravation against the totality of available mitigating evidence.'" *Id.* (quoting *Wiggins*, 539 U.S. at 534).

### 2. Analysis of Record

This case contains many aggravating factors.[7] Applicant, illegally armed with a firearm, shot a police officer twice while the officer was attempting to arrest him on a fugitive warrant. Applicant had an extensive, violent criminal history. He was in Texas as a parole violator, had absconded from Minnesota, and had previously been convicted for multiple aggravated robberies and for attempting to escape from jail.

---

[7]     *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1395 (2011) (describing aggravating facts including Pinholster's commission of hundreds of robberies, threats to kill the State's lead witness, history of violent outbursts, gang involvement, and other misconduct); *Wong v. Belmontes*, 130 S. Ct. 383, 390 (2009) (describing aggravated facts including evidence of a "savage" murder with extreme violence, that complainant's head was mangled and crushed, other injuries on complainant that revealed "a desperate struggle for life," and that Belmontes used the money stolen to buy drugs for the night).

However, this case also contains substantial mitigating evidence that the jury was unable to meaningfully consider. As previously discussed, evidence of applicant's remorse was introduced, but the jury could not have given full effect to the mitigative value of that evidence. Furthermore, the habeas record includes evidence of several mitigating factors—physical violence against applicant and his mother, neglect of applicant by his parents, and applicant's addiction to drugs—never heard by the jury that sentenced applicant to death. Joyce Williams stated that applicant's father was a "poor role model" because he was "an alcoholic who was often in prison and jail" and often "beat" her, causing applicant to be "exposed to his father's constant abuse." Ms. Williams also described applicant as someone who followed "older teenagers, usually into trouble" because he "had little parental supervision" due to her "poor health" and applicant's father's only "occasional[]" visits. She states that applicant was bullied and beaten often. A juror could reasonably find these facts mitigating.[8]

The habeas record also includes evidence concerning applicant's drug and alcohol abuse that was never presented to the jurors that they could have viewed as mitigating. Ms.

---

[8]     *See Ex parte Smith*, 309 S.W.3d 53, 61 (Tex. Crim. App. 2010) (evidence of applicant's "life in poverty and a crime-ridden neighborhood" tended "logically to prove that the applicant suffered the sort of deprived and troubled childhood that a fact-finder could reasonably deem to have mitigating value"); *Wiggins v. Smith*, 539 U.S. 510, 535 (2003) (prejudice where applicant's attorneys presented no evidence concerning his alcoholic mother, sexually abusive foster parents, or any other mitigating circumstances); *Ex parte Moreno*, 245 S.W.3d 419, 426 (Tex. Crim. App. 2008) (applicant granted new punishment hearing for proper consideration of mitigating evidence regarding applicant's "troubled childhood," including physical deformity, peer taunting, sickly mother, and lack of supervision).

Williams testified that applicant was exposed at a young age to drugs, which were "prevalent" in their community, and that applicant "abused both alcohol and drugs," became "chemically dependent," and never received treatment. *See Ex parte Smith*, 309 S.W.3d 53, 62 (Tex. Crim. App. 2010) (evidence showed that "applicant's ability to exercise moral judgment (as compared to his ability to exercise control of his conduct) was overcome by his severe drug addiction.").

In its findings of fact, the trial court concluded that "much of the alleged mitigation evidence was presented during the applicant's trial . . . [and] could have been considered by the jury within the scope of the special issues." The record only partially and minimally supports this finding. The record does show that some of the evidence in the habeas record was similar to the evidence presented during the applicant's trial: The trial evidence that applicant had a close relationship with his family is similar in strength and substance to the habeas evidence that he was a devoted son and had a loving relationship with his family. The trial evidence that he obtained his high-school-equivalency diploma and took college courses is also similar in strength and substance to the habeas evidence that he was a boy scout and enjoyed crafts. But, as previously discussed, none of this evidence would likely have swayed the jury from imposing a sentence of death.[9] These are the type of minor details that would

---

[9]     Two of the trial court's findings refer to the "limited good character evidence" supplied in the habeas record. The trial court's finding of fact number 117 states, "The Court finds that the alleged mitigation evidence, presented during habeas proceedings in the forms of affidavits from applicant's mother and sister, consists of limited good character evidence that could have been encompassed by the first and second special issues presented to the jury." The next finding states, "The Court finds speculative and unpersuasive any assertion that the jury would have viewed limited

not warrant habeas relief. *See Bobby v. Van Hook*, 130 S. Ct. 13, 19-20 (2009) (prejudice not established when new habeas evidence presents only "minor additional details" that "would have added nothing of value" when compared to trial evidence and when weight of aggravating evidence is substantial).

The trial court's finding, however, is largely unsupported by the record. The record shows that the jury never heard any of the habeas evidence that differs significantly in character and strength from the evidence introduced at trial and substantially alters the sentencing profile that was presented to the jury. *See Wiggins*, 539 U.S. at 534; *Williams*, 529 U.S. at 397-98; *Strickland*, 466 U.S. at 699-700. The totality of the mitigating habeas evidence—either never heard or never meaningfully considered by the jury—portrays applicant as someone who was abused by his father and frequently neglected by his parents; who suffered physical violence by bullies, which led him to follow older teenagers, often into trouble; who became dependent on drugs and alcohol at an early age; and who experienced feelings of remorse immediately upon learning that he had killed a police officer. I conclude that this new profile establishes a probability of a different outcome sufficient to undermine confidence in the jury's imposition of the death penalty. *See id.*; *Porter*, 130 S. Ct. at 455-56.

---

good character evidence as mitigating to the degree that the jury would have negatively answered the first and/or second special issue, in light of extensive aggravating evidence." I conclude that the disposition of this habeas application is unaffected by the "limited good character evidence" and should, instead, be resolved by consideration of other evidence.

This case is similar to *Porter v. McCollum*, in which the Supreme Court determined that the habeas evidence presented a different sentencing profile for the jury. 130 S. Ct. at 453-54. The jury at Porter's original sentencing heard almost nothing that would humanize Porter or allow the jurors to accurately gauge his moral culpability. *Id*. at 454. They learned about Porter's turbulent relationship with the victim, his crimes, and almost nothing else. *Id*. The Supreme Court determined that, had Porter's counsel performed effectively, the fact finder would have had evidence to assess applicant's moral culpability by learning of the kind of troubled history that is relevant in assessing a defendant's moral culpability. *Id*. The Court held, "Unlike the evidence presented during Porter's penalty hearing, which left the jury knowing hardly anything about him other than the facts of his crimes, the new evidence described his abusive childhood, his heroic military service . . . his long-term substance abuse, and his impaired mental health and mental capacity." *Id.* at 449.

Like *Porter*, the jury at applicant's original sentencing heard extensive evidence about his past and present crimes, but knew nothing of his abusive childhood, neglectful parents, and his long-term substance abuse. The jury knew only that applicant had a family that cared about him, had some interest in education, and it knew, but could not meaningfully consider, that applicant had demonstrated distress following the offense. Had applicant's counsel performed effectively, the jury would have learned about applicant's troubled history involving physical abuse, neglect, and drug abuse and been able to meaningfully consider his

remorse for the shooting. *See id*.[10]

The State contends that counsel's failure to introduce mitigating evidence was not prejudicial because calling applicant's family members to testify could have negatively affected his case. The State argues that "[c]alling the applicant's mother to testify would have subjected her to potentially damaging cross-examination about the conversation she had with applicant on the day of the incident." The State concludes that, in not introducing that testimony, counsel shielded applicant's mother and sister "from cross-examination about their close relationship with the applicant, their knowledge of the incident, their knowledge of the applicant's violent criminal history and parole status, and their clear motive for testifying and now providing habeas affidavits on his behalf."

The State is correct that the Supreme Court has found no prejudice when the additional habeas evidence would have opened the door to negative rebuttal evidence at trial. *See Wong v. Belmontes*, 130 S. Ct. 383, 389 (2009). In this case, however, the record does not reveal that applicant's habeas mitigation evidence would have opened the door to such evidence. The State speculates about "potentially damaging cross-examination about the conversation [applicant's mother] had with applicant." However, there is no evidence that applicant had told his mother anything that would have damaged him in the punishment

---

[10] *See also Ex parte Gonzales*, 204 S.W.3d 391, 399 (Tex. Crim. App. 2006) (prejudice found where, in light of unpresented evidence that applicant was physically and sexually abused as a child by his father, Court was unable to "say with confidence that the facts of the capital murder and the aggravating evidence originally presented by the State would clearly outweigh the totality of the applicant's mitigating evidence if a jury had the opportunity to evaluate it again.").

phase of trial.

Furthermore, the State's argument and trial court's conclusion focus on the absence of a nexus between the habeas evidence and the offense, but this is not a basis to discount the mitigation evidence. No connection between a mitigating circumstance and the offense is required in order for a jury to properly consider it. *See Coble v. State*, 330 S.W.3d 253, 296 (Tex. Crim. App. 2010). "Mitigating evidence unrelated to dangerousness may alter the jury's selection of penalty, even if it does not undermine or rebut the prosecution's death-eligibility case." *Williams*, 529 U.S. at 398. Because no nexus is required, the lack of a nexus between the habeas mitigation evidence and the offense has no bearing on whether a juror could reasonably find that applicant deserves a sentence of life instead of death. *See id.*; *Coble*, 330 S.W.3d at 296.

Counsel's deficient performance in failing to investigate mitigation evidence and in failing to request an appropriate jury instruction was a barrier to the jury's meaningful consideration of the available mitigating evidence. Ultimately, "[w]hen the choice is between life and death," the "risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty . . . is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments." *Penry I*, 492 U.S. at 328. Had the jury properly received this quantum of mitigating evidence, there is a reasonable probability that at least one juror would have struck a different balance so to undermine the confidence in the outcome. *See Wiggins*, 539 U.S. at 537. Because counsel failed to make available, for the

jury's meaningful consideration, mitigation evidence that would have substantially altered applicant's sentencing profile, I would hold that applicant has established prejudice. *See Strickland*, 466 U.S. at 694. I would sustain his thirteenth ground for relief.

## IV. Conclusion

The Texas death-penalty scheme was unconstitutional as applied to applicant because the jury was not permitted to give meaningful effect and a reasoned moral response to the evidence that applicant was remorseful for killing a police officer. Furthermore, applicant's attorney's failure to investigate for mitigation evidence because he did not know what it was rendered constitutionally deficient his representation in the sentencing phase of trial. For these reasons, I would grant relief and remand for a new trial on punishment.

Filed: June 13, 2012

Do Not Publish